**ELAND ENERGY, INC., Appellant,**

v.

**ROWDEN OIL & GAS, INC., American Cometra, Inc., Cometra Oil & Gas, Inc. and Tri–C Resources, Inc., Appellees.**

No. 04–93–00550–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 20, 1995.

Rehearing Overruled Jan. 11, 1996.

.

Earl L. Yeakel, III, Amanda Foote Schmidt, Clark, Thomas & Winters, Austin, C.M. Zaffirini, Zaffirini, Castillo & Pellegrin, Laredo, C.B. Harrison, Jr., Law Office of C.B. Harrison, Jr., Dallas, for appellant.

Robert D. Jenkins, Houston, W. Wendell Hall, Fulbright & Jaworski, V.E. Lanfear, Jr., San Antonio, Donato Ramos, Person, Whitworth, Ramos, Borchers & Morales, Laredo, for appellee.

Before STONE, HARDBERGER and GREEN, JJ.

## OPINION

GREEN, Justice.

The appellee, Rowden Oil & Gas, Inc. (Rowden, Inc.) sued the appellant, Eland Energy, Inc. (Eland) for declaratory judgment and other relief to clear its title to an oil and gas lease covering approximately 770 acres of land situated in Webb County known as "the Perez Lease." Eland claims an undivided one-third interest in the Perez Lease and the wells situated thereon. The remaining appellees, Tri–C Resources, Inc., Cometra Oil & Gas, Inc., and American Cometra, Inc., were third-party defendants and intervenors. All parties filed motions for summary judg-

ment. The trial court granted summary judgment in favor of appellees against Eland. In ten points of error, Eland contends the trial court erred in granting the appellees' motions and in denying its own motion. We affirm.

## FACTUAL BACKGROUND

### 1. The Cox Farmout

█ On September 15, 1971, Ralph Rowden and Edwin L. Cox, Sr., executed a letter farmout agreement[1] covering the Perez Lease (the Cox Farmout). The Cox Farmout provided that if Cox commenced drilling within ten days and drilled to a specified depth, he would have the right to continue drilling under the agreement. The Cox Farmout also provided that Rowden would assign Cox "40 acres in the form of a square as nearly as possible" in a restricted depth around each producing well Cox completed, reserving a one-eighth royalty and other rights.

When Cox gave notice he was ready to plug and abandon a well, Rowden had the right to take over the well. In that event, Rowden would pay the reasonable salvage value of the materials in the hole and Cox's rights in the tract upon which the well was located would terminate. Cox would then reassign the terminated tract back to Rowden.

The Cox Farmout also provided that it was binding on the parties and their heirs, successors, and assigns, but that the contract was not to be assigned without the owner's written consent.

### 2. The Lease Assignment

After Cox timely completed the first well under the Cox Farmout, he suggested to Rowden that, rather than execute a series of assignments of forty-acre production units as each producing well was completed, it would be easier if Rowden would assign the entire Perez Lease to Cox. Under this plan, the undeveloped portions of the Perez Lease would be assigned back to Rowden when all drilling ceased. The new arrangement would remain subject to Cox's continuous drilling obligation. Rowden agreed, and this modification of the Cox Farmout was accomplished when Rowden signed the November 1, 1971 "Assignment of Oil, Gas, and Mineral Lease" (the Lease Assignment). The Lease Assignment was thereupon duly recorded in the real property records for the county.

Significantly, the Lease Assignment provided that:

*[t]his Assignment is made subject to the terms and provisions of that certain Letter Agreement dated September 15, 1971, between Assignor and Assignee and in particular to the continuous drilling obligation imposed on Assignee by such Agreement and to all the terms and provisions of the above described Oil, Gas and Mineral Lease, the Assignments thereof, and to all instruments of record affecting said lease.*

(Emphasis added). Apparently, the parties entered into the Lease Assignment to modify the Cox Farmout only in the mechanics of transferring earned interests in the Perez Lease from Rowden to Cox.[2]

---

1. A "farmout" agreement is "a very common form of agreement ... whereby the owner of a lease not desirous of drilling at the time agrees to assign the lease, or some portion of it ... to another operator who is desirous of drilling the tract.... The primary characteristic of a farmout is the obligation of the assignee to drill one or more wells on the assigned acreage as a prerequisite to the completion of the transfer to him." *Mengden v. Peninsula Production Co.*, 544 S.W.2d 643, 645 n. 1 (Tex.1976) (quoting WILLIAMS AND MEYERS, OIL AND GAS LAW, MANUAL OF TERMS 167 (1971)).

2. Farmout agreements generally come in two forms: agreements to transfer, and conditional assignments. The difference stems from the time when the farmee acquires an interest in the

farmed-out property. In an agreement to transfer, the farmee obtains its rights after it performs the prerequisite conditions under the contract. In a conditional assignment, the farmee acquires its interest in the property when the agreement is made, and is required to reconvey its interest only if its obligations under the agreement are not performed. *See* JOHN S. LOWE, *Analyzing Oil and Gas Farmout Agreements*, 41 SOUTHWESTERN L.J. 759, 796 (1987). In this case, the September 15, 1971 Cox Farmout was of the "agreement to transfer" form. The subsequent Lease Assignment would appear to be of the "conditional assignment" form but for the "subject to" language subordinating it to the September 15, 1971 farmout agreement.

### 3. The Origin of Eland's Interest

By 1979 Cox had drilled a total of fourteen wells. That year, he quitclaimed to each of his three children an undivided one-third[3] interest in the Perez Lease, "subject to any reservations, limitations or burdens effecting [sic] said leases." In 1987, Cox's son, Edwin L. Cox, Jr., assigned his undivided one-third interest in the Perez Lease to Lakeview Partners, L.P.; Cox's other two children assigned their interests in the Perez Lease to Prudential–Bache. Prudential–Bache then entered into an operating agreement with Graham Royalty, Ltd. concerning its interest in the Perez Lease.[4]

In 1989 Eland acquired the interest of Lakeview Partners, relying on Lakeview Partners' record title to an undivided one-third interest in the Perez Lease. Eland then joined Prudential–Bache in the operating agreement with Graham Royalty, specifically making its participation retroactive to the inception of that agreement.

Also in 1989, Graham Royalty, acting on behalf of Prudential–Bache, quitclaimed back to Rowden, Inc. (Rowden's successor) all of Prudential–Bache's remaining interest in the Perez Lease outside of designated forty-acre tracts around four producing wells. The remainder of the fourteen drilled wells had either already been assigned back to Rowden by this time, or had been plugged and abandoned. Eland declined to follow suit and did not assign back to Rowden, Inc. its interest in the undeveloped areas of the Perez Lease. Instead, Eland now claims an undivided one-third interest both in the designated forty-acre tracts and the undeveloped acreage in the entire Perez Lease.

Rowden, Inc. subsequently farmed out 164.94 acres in the northwest portion of the Perez Lease to appellee Tri–C Resources, Inc. Tri–C drilled a producing well and assigned rights to appellee American Cometra, Inc. Appellee American Cometra, Inc. assigned its rights in the lease to appellee Cometra Oil & Gas, Inc. Because Eland claims to own a one-third interest in the entire Perez Lease, it also claims a one-third interest in the Cometra lease. On May 3, 1991, Rowden, Inc., joined later by Cometra, filed this suit against Eland to clear Rowden, Inc.'s claimed title in the Perez Lease.

### THE SUMMARY JUDGMENT

### 1. The Motions for Summary Judgment

Rowden moved for summary judgment to clear its title in the Perez Lease alleging: (1) that Eland was charged with constructive notice of the terms and provisions of the Cox Farmout and was bound thereby; (2) that Eland, by joining the operating agreement with Graham Royalty, was estopped as a matter of law from claiming title to any portion of the Perez Lease lying outside of the forty-acre proration units identified in the operating agreement; (3) that Eland, by joining the operating agreement with Graham Royalty, ratified and confirmed the relinquishment to Rowden of the abandoned wells and their forty-acre proration units, together with all of the undeveloped acreage within the Perez Lease; and (4) that the November 15, 1971 Lease Assignment from Rowden to Cox was expressly limited to convey only the wells completed by Cox as commercial producers, together with forty-acre spacing units around each well, and that such assignment is incapable of a construction that it conveyed any interest in undeveloped acreage lying outside of any forty-acre spacing unit.

The remaining appellees moved for summary judgment on the basis that (1) Eland was charged with constructive notice of the Cox Farmout and should be bound by its terms; and (2) the Cox Farmout adequately described the 40–acre units as evidenced by Prudential–Bache's designation. Eland's response and counter motion for summary judgment alleged that the appellees' claims were barred by limitations, laches, and the Statute of Frauds.

---

**3.** More precisely, Cox conveyed 33% to Edwin L. Cox, Jr., 33% to another son, and 34% to his daughter.

**4.** Two Prudential–Bache partnerships took ownership interests, but Graham Royalty, Ltd. has acted consistently for both. We refer to these non-parties collectively as "Prudential–Bache."

### 2. The Trial Court Judgment

The trial court found that the Cox Farmout only allowed the farmee to earn the right to forty-acre tracts around completed wells; that Ralph Rowden assigned Cox the entire Perez Lease (with depth restrictions) subject to the Cox Farmout; and that Eland obtained its interest in the Perez Lease subject to all of the terms and provisions of the Cox Farmout.

The court further found that Prudential–Bache had assigned all of its interest outside of the four designated tracts to Rowden, Inc. and concluded that Eland's interest in the Perez Lease was limited to the forty-acre tracts designated and retained in the Prudential–Bache assignment to Rowden, Inc. Finally, the court found that Rowden, Inc. farmed out the northwest quarter of the lease to Tri–C and its successor, Cometra Oil & Gas, Inc., and concluded that Eland had no interest in the well that Tri–C drilled on the Perez Lease or any part of Tri–C's farmout from the Perez Lease.

■ The trial court did not specify its reasons for granting appellees' motions for summary judgment. Therefore, to obtain reversal, the appellant must show that all of the independent grounds alleged in appellees' motions for summary judgment are insufficient to support the judgment. *Rogers v. Ricane Enter., Inc.,* 772 S.W.2d 76, 79 (Tex. 1989); *Sipes v. Petry & Stewart,* 812 S.W.2d 428, 430 (Tex.App.—San Antonio 1991, no writ). To obtain rendition on its own motion, the appellant must establish its defense as a matter of law. *See Gulf, Colorado & Santa Fe Ry. v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 500 (1958).

### 3. The Standard of Review

■ A party moving for summary judgment on its cause of action must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex. 1985). If a movant establishes each element of its cause of action as a matter of law, then the non-movant must come forward with summary judgment evidence sufficient to raise a fact issue on each element of its affirmative defense to avoid summary judgment. *See MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

■ A defendant moving for summary judgment on an affirmative defense, as Eland did in the present case, must conclusively prove all elements of that defense in order to prevail. *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991); *see also Torres v. Western Casualty & Sur. Co.,* 457 S.W.2d 50, 52–53 (Tex.1970). The burden on such a defendant is to prove conclusively all elements of the affirmative defense as a matter of law, eliminating all genuine issues of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). The non-movant has no burden in response unless the movant has conclusively established the affirmative defense. *Oram v. General American Oil Co.,* 513 S.W.2d 533, 534 (Tex.1974).

■ Once the defendant-movant produces sufficient evidence to establish the defense, the plaintiff-respondent must present evidence that raises a genuine issue of material fact in order to avoid summary judgment on the affirmative defense. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936 (Tex.1972); *Stevenson v. Reese,* 593 S.W.2d 828, 831 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref. n.r.e.).

■ In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the non-movant. *Montgomery,* 669 S.W.2d at 311; *Nixon,* 690 S.W.2d at 548–49. Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in its favor. *Montgomery,* 669 S.W.2d at 311; *Nixon,* 690 S.W.2d at 549.

### ANALYSIS

Eland presents five reasons why summary judgment for appellees was improper:

### 1. The Statute of Limitations

■ In points of error two and three, Eland contends that the trial court erred in

granting appellees' motions for summary judgment, and further erred in denying Eland's motion for summary judgment, because appellees' claims were barred by the four-year statute of limitations relating to contracts to convey land. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.004(a)(1) (Vernon 1986). In support of this argument, Eland claims that this lawsuit is in reality a suit to enforce a contractual obligation to convey real property but was cleverly pleaded as a suit for declaratory judgment to clear title to real property.

It is Eland's theory that the Lease Assignment from Rowden to Cox was a conditional assignment of Rowden's entire interest in the Perez Lease; that is, complete title was transferred to Cox, but with a covenant to assign the undeveloped areas back to Rowden upon breach of the continuous drilling obligation. Under this theory, since more than four years had elapsed since drilling operations were discontinued, Eland claims that appellees are time barred from an action to compel specific performance of the obligation to reassign.

Rowden denies that this suit involves specific performance of a contract to reconvey. Instead, Rowden claims this is a suit to clear title to property, an action not burdened by a statute of limitations. *Elmore v. Hubbard,* 332 S.W.2d 765, 770–71 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.); *Tijerina v. Tijerina,* 290 S.W.2d 277, 278 (Tex.Civ.App.—San Antonio 1956, no writ). Rowden contends that the Lease Assignment passes only bare legal title in the Perez Lease because it is subordinated to the Cox Farmout by the "subject to" clause; the equitable title to the property remains with Rowden. Rowden argues that Cox can only "earn" the equitable title by drilling commercially producing wells, and the legal and equitable titles are merged when the forty-acre tracts around the wells are designated.

Eland's limitations theory is grounded on the assumption that at some point in time

Eland was vested with equitable title to the Perez Lease. Only if Eland is an owner of the entire Perez Lease can it be subject to an action to reassign the undeveloped areas to Rowden. Obviously, one cannot be compelled to convey title to property one does not own. Therefore, in order to evaluate Eland's theory, it is necessary to trace its claim of title.

Eland's interest in the Perez Lease originates with the Cox Farmout; thus, its rights in the lease can be no greater than whatever rights were acquired by Cox by virtue of the farmout agreement. The parties agree that the Lease Assignment, which Eland relies upon in its claim of title, is made "subject to" the Cox Farmout. It is the effect of the "subject to" clause that is the crux of this dispute.

The "subject to" clause of the Lease Assignment cannot be ignored. It must be assumed that the parties intended that it have meaning.[5] And if the clause has any meaning at all it is that, despite the assignment to Cox of legal title to the entire Perez Lease, Cox was only able to acquire equitable title in the lease by earning it in accordance with the terms of the Cox Farmout. *See Neeley v. Intercity Mgmt. Corp.,* 623 S.W.2d 942, 950–51 (Tex.App.—Houston [1st Dist.] 1981, no writ) (defining equitable title as the right to have legal title transferred). Thus, the Cox Farmout and the Lease Assignment, read together, operated to reserve to Rowden the equitable title, *i.e.,* the right to legal title, to all lands included within the Perez Lease which were not affected by the producing wells completed by Cox. Stated another way, there is nothing in the Lease Assignment that permits Cox to earn an interest in the Perez Lease outside of the forty-acre tracts surrounding each of the completed wells.

In 1989, Graham Royalty, acting on behalf of Prudential–Bache, surveyed and designated the forty-acre tracts associated with the four remaining producing wells. When the

---

5. One commentator urged drafters to use "subject to" language because it minimizes conflicts between the farmout agreement and subsequent assignments. Lowe, *supra* note 2, at 791 n. 126. Even in the absence of such language, the Missis-

sippi Supreme Court concluded that an assignment did not supersede the prior farmout agreement. *Phillips Petroleum Co. v. Stack,* 231 So.2d 475, 482 (Miss.1969).

forty-acre designations were made, equitable title to those tracts was perfected and merged with the legal title already held by Cox's successors-in-interest (Prudential–Bache and Eland) by virtue of the Lease Assignment.

Other than the abandoned wells which reverted back to Rowden, Cox did not acquire any equitable interest in the undeveloped acreage of the Perez Lease by virtue of the Cox Farmout and Lease Assignment, and Eland cannot enlarge Cox's interest. Accordingly, Eland could not have acquired an interest in the Perez Lease outside of the four forty-acre tracts.

Because Eland does not own an equitable interest in the property in which Rowden seeks to settle title, Rowden's claim cannot be accurately characterized as a specific performance action to convey real property.[6] Consequently, the four-year statute of limitations does not apply. We overrule appellant's second and third points of error.

## 2. The Statute of Frauds

■ In *points of error four* through seven, Eland contends that the statute of frauds rendered unenforceable any obligation of Eland to reassign Rowden unearned acreage in the Perez Lease because the description of the land to be conveyed is too vague. *See* TEX.BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). A contract that fails to meet the requirements of the statute of frauds is not void but is merely voidable. *Enochs v. Brown,* 872 S.W.2d 312, 318 (Tex.App.—Austin 1994, no writ). In support of its contention, Eland argues that it is impossible to determine from the four corners of the Cox Farmout what forty-acre tracts Rowden was obligated to assign under that agreement. Accordingly, Eland concludes that the Cox Farmout was unenforceable, leaving the Lease Assignment independent of it. Similarly, Eland argues that the obligation to reassign under the modified agreement was unenforceable because it is impossible to determine from the four corners of the combined documents what forty-acre tracts should be taken out of the Perez Lease upon reassignment. We conclude, however, that the statute of frauds does not render either obligation voidable.

### a. Obligation Under the Cox Farmout.

■ If the Cox Farmout is viewed separately from the Lease Assignment, Rowden's obligations under that instrument were fully performed—and Cox accepted the performance—when the Lease Assignment was executed. That is, the Cox Farmout required Rowden to assign to Cox the legal title to earned forty-acre tracts. The Lease Assignment satisfied that obligation when legal title to the entire Perez Lease was assigned to Cox. Therefore, the statute of frauds is not available to Eland as a defense to the Cox Farmout. *See, e.g., Anderson v. Eliot,* 333 S.W.2d 654, 656 (Tex.Civ.App.—Eastland 1960, writ ref'd) (defendants who accepted assignments of mineral leases could not raise statute of frauds as defense to payment); *Osborn v. Cone,* 234 S.W.2d 88, 90 (Tex.Civ. App.—Fort Worth 1950, no writ) (statute of frauds not available to defendant who accepted deed to Louisiana royalty interest).

### b. Obligation Under the Lease Assignment.

■ Eland's points six and seven claim the obligation to reassign the undeveloped portions of the Perez Lease is unenforceable under the statute of frauds. Eland contends that it was impossible to determine at the time of the Lease Assignment what would have to be reassigned upon termination of drilling because the parties did not know where the wells and their corresponding forty-acre tracts were going to be.

■ We must evaluate the sufficiency of the description of land to comply with the statute of frauds as of the time the parties contracted. *Stekoll Petroleum Co. v. Hamilton,* 152 Tex. 182, 191, 255 S.W.2d 187, 192

---

6. We do not find our opinion in *Energy Reserves Group, Inc. v. Tarina Oil Co.,* 664 S.W.2d 169 (Tex.App.—San Antonio 1983, no writ), controlling. Although that case involved a farmout agreement of the agreement to transfer type, the petition described a suit for specific performance of a contract. *Id.* at 171. Thus, Tarina Oil failed to state the land recovery exception to the venue statute. *Id.* at 173.

(1953). To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be assigned may be identified with reasonable certainty. *Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972).

The Lease Assignment incorporated the Cox Farmout, which adequately described the Perez Lease. *See Crowder v. Tri–C Resources, Inc.,* 821 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1991, no writ) (for a writing to use description in another existing writing, the contract must refer to that other writing). But the pertinent issue here is whether the title instruments provided an adequate description of the forty-acre tracts that were earned when Cox drilled producing wells. There must be some means in the instruments by which to identify the boundaries of these tracts. Only if the tracts are sufficiently identifiable can the title instruments be enforceable.

The Cox Farmout provides that if Cox drilled a producing well on the Perez Lease, Rowden would assign him "40 acres in the form of a square as nearly as possible" where the well was located. Eland claims that the quoted language is too vague and indefinite to satisfy the statute of frauds; thus, the obligation to reassign the Perez Lease minus the forty-acre tracts is unenforceable.

 The Cox Farmout granted Cox the unrestricted right and authority to locate his wells anywhere on the Perez Lease that he desired. The farmout agreement also gave Cox an equitable right to perfect his title in those tracts by selecting the boundaries of the forty-acre tracts he had earned. *See Stekoll Petroleum Co.,* 255 S.W.2d at 191. But the right to make the designation is a right that may be lost by delay in making the designation. *Id.* Therefore, upon the completion of a producing well it was in Cox's interest—and to perfect his equitable title it became his obligation—to designate the forty-acres surrounding the well. *See Tiller v. Fields,* 301 S.W.2d 185, 190 (Tex.Civ.App.—Texarkana 1957, no writ). The right to make the designation, coupled with the interest in doing so, satisfies the requirements of the statute of frauds. *See id.*

The fact that Cox failed to promptly make the forty-acre designations on his completed wells is not fatal to the enforceability of the transaction. In 1989, Graham Royalty, acting for Prudential–Bache, surveyed forty-acre tracts for the four remaining Cox producing wells and, except for its interest in those four wells, assigned back to Rowden the Prudential–Bache undivided two-thirds legal interest in the undeveloped portions of the Perez Lease. As a practical matter, the designations perfected the equitable title of all interested parties in their respective interests in the Perez Lease. Rowden, Prudential–Bache, and Eland were all able at that time to identify the boundaries of their real property interests.

The property interests in the Perez Lease being adequately described, the trial court did not err when it found the statute of frauds did not bar the appellees' claims. We overrule points four through seven.

### 3. The Non–Assignability Clause

 Eland's eighth point of error attacks the non-assignability clause in the Cox Farmout as an improper basis for the summary judgment in favor of Rowden. Paragraph X of the Cox Farmout provides: "All the terms and provisions of this agreement shall be binding upon the parties hereto and their heirs, successors and assigns, provided, however, that you may not assign this contract in whole or in part without first obtaining Owner's written consent thereto."

 For this theory to support the summary judgment, the trial court would have had to conclude that this clause prevented assignment. For a non-assignability clause to prevent assignment, the proponent must prove that it relied on the personal trust, confidence, skill, character, or credit of the other party. *Crim Truck & Tractor v. Navistar Internat'l Transp. Corp.,* 823 S.W.2d 591, 596 (Tex.1992). The contract documents do not recite reliance on any of these factors, and the appellees did not prove reliance on any of them as a matter of law. Thus, Eland correctly concluded that the non-assignability clause did not prevent assignment.

■ However, it appears from the judgment that the trial court did not conclude that the nonassignability clause prevented assignment. The summary judgment states, "The interests of Eland Energy, Inc. in the Lease are hereby limited to the forty (40) acre production units surrounding Well Nos. 3, 6, 8 and 14...."[7] This statement indicates the trial court found Eland had an interest in the Perez Lease, and Eland had no source of title other than Cox. Because the trial court did not make the error the appellant claims, we overrule Eland's eighth point of error.

### 4. Estoppel

■ Eland joined Prudential–Bache in the operating agreement with Graham Royalty, retroactive to the inception of the agreement. The appellees contended below that this operating agreement constituted ratification of Prudential–Bache's previous assignment to Rowden of its interest in the undeveloped portions of the lease. Therefore, they claimed Eland was estopped to claim an interest in any part of the assigned lease. In its ninth point of error, Eland asserts that any conclusion by the trial court that Eland ratified or was estopped to deny the appellees' title was error.

The assignment from Prudential–Bache to Rowden, Inc. stated that Prudential–Bache "does transfer, assign and convey unto ASSIGNEE, all of ASSIGNOR'S right, title and interest in and to" the Perez Lease, outside the boundaries of the forty-acre tracts described in an attached exhibit. Thus, Prudential–Bache quitclaimed its interest, which derived from two of Cox's three children. *See Rogers v. Ricane Enter., Inc.*, 884 S.W.2d 763, 769 (Tex.1994) (quitclaim does not pass any greater title than the grantor has). By joining the operating agreement, Eland did not ratify, or was estopped from claiming, the remaining one-third legal title to the *entire* Perez Lease. However, Eland had a beneficial interest in the acreage that was part of the forty-acre tracts upon which Cox had drilled producing wells. Eland had

no right to share in the benefits of the forty-acre tracts identified in the operating agreement unless those were the same acres in which it held an equitable interest. By joining the operating agreement to accept benefits from the designated tracts, Eland ratified the designation of the forty-acre tracts. Therefore, to the extent it applied to equitable title, the trial court correctly held that Eland had no interest outside of the tracts designated in its operating agreement with Prudential–Bache. We overrule Eland's ninth point of error.

### 5. Laches

■ Eland contends in its tenth point of error that there is a genuine issue of material fact about whether the equitable defense of laches bars the appellees' claims "to the undeveloped portions of the Perez Lease." Eland claims that Rowden and his successors delayed unreasonably before enforcing the right to reassignment. In reliance upon that delay Eland also asserts it changed its position in good faith to its detriment. *See Rogers*, 772 S.W.2d at 80 (defining the elements of laches). However, laches is not a defense to a claim of title. *Id.; Burress v. Burress*, 433 S.W.2d 527, 530 (Tex.Civ.App.—Texarkana 1968, no writ).

We have already held that this is not an action to enforce a contract to convey real property; this is a title suit. Thus, laches cannot be a defense to this action. We overrule Eland's tenth point of error.

### CONCLUSION

Eland's first point of error is a global complaint that the trial court erred in granting appellees' motions for summary judgment. In view of our holding on Eland's other points, we overrule its first point of error.

We affirm the trial court's judgment.

---

7. As we explained above, the trial court also found that Eland obtained its interest in the Lease subject to the Cox Farmout. Findings of fact are inappropriate to summary judgments

and should be ignored. *Samaniego v. El Paso Towing, Inc.*, 836 S.W.2d 702, 704 (Tex.App.—El Paso 1992, writ denied).