# Court of Appeals
## Tenth Appellate District of Texas

---

10-24-00256-CV

---

Louis A. Tsakiris Family Partnership, Ltd.,
Appellant

v.

Patrick Haskell,
Appellee

---

On appeal from the
66th District Court of Hill County, Texas
Judge A. Lee Harris, presiding
Trial Court Cause No. CV075-23DC

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

This appeal involves a dispute between Patrick Haskell and Louis A. Tsakiris Family Partnership, Ltd. (Tsakiris LP)—two parties claiming that they purchased the same fifty-two acres of real property from G.L. "Buck" Harris. Following a jury trial, the trial court signed a final judgment in favor of Haskell. In six issues, Tsakiris LP appeals. We will reverse and render.

**Background**

**A.    Haskell's Purchase of the Property**

Haskell testified that around 2015, he purchased fifty-two acres of real property from Harris without the involvement of a real estate agent, attorney, or title company.  Haskell explained that in the past, he had purchased property primarily with the assistance of a real estate agent but that he had also previously purchased one or two properties that were for sale by owner without the involvement of a real estate agent or attorney and had never had any problem.

Haskell testified that the property at issue in this case was listed for sale by owner.  Additionally, after talking to Harris, Haskell thought that Harris was very straightforward, that Harris had experience in this area, and that the transaction would be simple.  Haskell therefore felt comfortable proceeding with the transaction without the involvement of anyone else.

Haskell testified that on December 19, 2014, he received an email from Harris regarding the property, which stated:  "We will do the note and deed of trust if you agree with the following terms."  Haskell testified that the provisions that were then listed in the email described the material terms of the agreement under which he purchased the property from Harris.  The record, however, does not include Haskell's response confirming his agreement

to the terms listed in the email, nor does the record include a purchase and sale agreement regarding the purchase of the property by Haskell from Harris.

In Harris's email, the property is described only as "52 acres which will be on a aerial track # 1 and accept [*sic*] for 20 acres and the 2 metal buildings they are on." Haskell testified that Harris's tract of land included a total of 73.69 acres but that the tract had two buildings on it that Harris did not want to sell. Haskell explained that he had therefore negotiated with Harris to buy the land to the north and to the south of the land with the buildings on it, which ended up totaling fifty-two acres.

On December 31, 2014, Harris then emailed Haskell a deed of trust and promissory note for Haskell to sign. On January 6, 2015, Haskell executed the deed of trust in Harris's favor. The deed of trust provided the following "[l]egal description" of the property: "See Exhibit 'A'. 'Save and except for 20 acres and two metal buildings (ten acres on each side of the buildings).'" Harris explained in his December 31 email: "We will add the legal description as a separate sheet Exhibit 'A' when we get it from the title company."

Harris further confirmed in his December 31 email that he had called a surveyor to request a survey of the property. Haskell testified that Harris had the survey conducted to determine the property lines of the middle portion of the property on which the buildings that Harris wanted to keep were located

and to determine the property lines of the two tracts of land that Haskell was purchasing. Harris delivered the survey to Haskell once it was completed.

The field notes from the survey contain the metes and bounds description of fifteen acres of land identified as "TRACT 1," the metes and bounds description of thirty-seven acres of land identified as "TRACT 2," and the metes and bounds description of 21.67 acres of land identified as the "REMAINDER TRACT." At trial, Haskell identified Tracts 1 and 2 as the property that he purchased from Harris and the remainder tract as the land that was not being conveyed to him.

On January 29, 2015, Harris then sent Haskell another email that stated: "Please sign the note and sign the deed of trust and send me a copy of these two documents. At your convenience go and record it in Hill County. Once you have it recorded[,] please send us a copy of those as well." On February 20, 2015, Harris then emailed Haskell with an attached title search on the fifty-two acres. Harris's email further stated: "Please send me a signed note as soon as possible."

An unsigned version of the promissory note was admitted as evidence at trial. Haskell confirmed in his testimony that Harris had sent him the promissory note, dated January 1, 2015, outlining the loan for the property. Haskell testified that he had signed the promissory note and had returned it to Harris. The promissory note stated: "The securing property is: See Exhibit

'A'." However, no Exhibit "A" was attached to the note. Haskell nevertheless testified that he sent Harris a check dated January 22, 2015, for $5,000 as a down payment on the property and that he had thereafter made payments on the property.

Haskell testified that he did not move onto the property after he purchased it. Haskell explained that when he purchased the property, it was vacant land that was being farmed by a lessee and that, at that time, he wanted the lessee to continue farming the land. Haskell therefore made a verbal agreement with the lessee to farm the land, and at the end of every year, the lessee would mail Haskell a check.

Haskell confirmed that the use of the property did not change between the time that Harris owned the property and the time that he owned it. Haskell stated that he did not build any fences, buildings, or structures of any kind on the property. When asked if he did anything to the property after he purchased it, Haskell replied: "I cut the for sale sign down on it."

Haskell testified that, on March 10, 2016, Harris's wife Carolyn[1] then sent Haskell a letter regarding the fifty-two acres. Haskell explained that Carolyn had not participated in the transaction between Harris and him regarding the property but that, at times, she had communicated for Harris

---

[1] Because Harris and his wife have the same last name, we will refer to Harris's wife by her first name.

regarding the transaction. Haskell testified that Carolyn's letter was about paying his share of the property taxes on the property. Carolyn's letter stated that the Harrises had paid the total amount of property taxes for the entire tract of land, including the fifty-two acres that Haskell had purchased, and that Haskell therefore owed them the amount of the property taxes for the fifty-two acres that he had purchased from them. Additionally, the letter stated: "Please take your paper work provided you when you bought the property and file it with Hill County. That way they will send you a tax statement for your 52 acres."

Haskell testified that he responded to Carolyn's letter by sending a check to Harris for payment of his share of the property taxes. Additionally, on August 31, 2016, Haskell filed with the Hill County Clerk the deed of trust that he had previously executed in Harris's favor. Regarding the legal description of the property, the deed of trust provided: "See Exhibit 'A'. 'Save and except for 20 acres and two metal buildings (ten acres on each side of the buildings).'" But no Exhibit "A" was attached to the deed of trust. Haskell asserted that he discovered years later when he called the county clerk's office that the last two pages that he had tried to file—the pages that included the plat of the property that he had purchased from Harris—had not been recorded in the real property records.

Haskell testified that on September 1, 2016, he then paid off the remaining balance on the fifty-two acres with the proceeds from the sale of another property. Haskell asserted that, at that time, he owed Harris no other performance on their agreement. Additionally, that same day, upon receiving Haskell's payment, Harris and Carolyn sent a confirmation to Haskell that read: "Thank you for your check . . . , received today to pay off completely your note . . . on the 52 acres Hill County, Texas."

Despite this, Haskell acknowledged at trial that not all the documents related to the sale of the property had been completed, and Haskell admitted during his testimony that, in retrospect, he "made a huge, huge mistake." As stated above, the record does not include a purchase and sale agreement regarding Haskell's purchase of the property from Harris. Furthermore, the record does not include a deed conveying the fifty-two acres from Harris to Haskell.

Haskell testified that it was always his and Harris's contemplation that all the documents related to the sale of the property would be completed. When asked why they were not completed, Haskell replied that he thought that they had been. Haskell stated that, at that time, he thought that he had done the right thing and that the sale had been recorded in the Hill County real property records. Haskell acknowledged, however, that that evidently had not happened.

## B. Tsakiris LP's Purchase of the Property

Louis Tsakiris testified that he is the owner of Tsakiris LP and had been purchasing property in Hill County when he saw that Harris had a large amount of property that was adjacent to other properties that he had purchased. Tsakiris testified that he therefore met with Harris and, in December 2018, made an offer to purchase Harris's property. Harris, however, declined Tsakiris's offer at that time. Tsakiris nevertheless decided to approach Harris again in 2019.

Ron Stevens, who had been a broker on multiple deals in Hill County for Tsakiris, testified that Tsakiris told him to reach out to Harris again to see if Harris was interested in selling his property. Stevens thus called Harris, and Harris said that he was interested. Stevens then asked Harris if he could visit Harris's home, and Harris consented to the meeting. Stevens therefore went to Harris's home. Michael Magness, who has been involved in real estate with Tsakiris for many years, testified that he also went to the meeting at Harris's home. Magness had power of attorney from Tsakiris to execute a contract with Harris at the meeting.

Harris testified that during the meeting at his home, he clearly explained that he had already sold the specific fifty-two acres of land at issue in this case to Haskell and that those fifty-two acres therefore had to be excluded from any contract. Stevens and Magness testified, however, that Harris never said that

he had already sold the property, and, on April 18, 2019, a written contract was entered into between Harris and Tsakiris "and/or Assigns" for the sale and purchase, respectively, of approximately 435 acres of land, including the fifty-two acres of land at issue in this case.

Tsakiris testified that Stevens thereafter informed him that Harris had called and told him that he may have sold a portion of the tract that included the fifty-two acres. Tsakiris responded by telling Stevens to alert the title company.

The business records of Hill County Title Co. (Hill County Title) indicate that Stevens called on May 2, 2019, to report that Harris thought that he remembered selling a part of the land "described in survey label #3" but that Harris could not remember definitively. That same day, Stevens followed up with an email to Hill County Title that stated:

> [W]ould you please have your Abstract/Examiner teams look up the parcel on Survey #3 … recorded in Volume 1430 Page 135 of the Official Public Records of Hill County … determine if Mr. Harris has sold any of the 71 acres, and if so how may [sic] acres and to whom? Mr. Harris believes he sold sections to the north and south of the two metal building[s.]

Jennifer Nowlin, the officer manager and an escrow officer for Hill County Title, testified that after a thorough search, Hill County Title found nothing in the real property records indicating that Harris had conveyed any portion of the tract in question. Furthermore, the "Attorney's Report on Title

to Hill County Title Co.," dated May 28, 2019, indicated that title to the tract in question was vested in Harris. Nowlin stated that Hill County Title thereafter used the attorney's report to prepare a title commitment. Nowlin further confirmed that after receiving the attorney's report, she no longer had any lingering concerns about whether Harris owned all of the tract in question.

On July 12, 2019, Harris and Carolyn then executed a general warranty deed, conveying eight separate tracts of land, including the fifty-two acres of land at issue in this case, to Tsakiris LP.

## C.     The Lawsuit

Haskell testified that, at some point, he realized that he had not received a tax bill for the property in question. Haskell therefore checked the Hill County tax records and discovered that Harris's name was still on the property at that time. Haskell stated that he immediately called Harris and Hill County and found out that Tsakiris LP had purchased the property and was filing a deed for the property.

Haskell subsequently sued Harris, Carolyn, and Tsakiris LP, requesting that the attempted conveyance of the property to Tsakiris LP be set aside and that "legal title to such property be quieted" in him. In the alternative, Haskell requested that he recover damages from Harris and Carolyn.

In response, Tsakiris LP generally denied Haskell's allegations. Tsakiris LP also asserted the affirmative defense of the statute of frauds, among others.

Harris thereafter filed for bankruptcy. Accordingly, Haskell and Tsakiris LP filed a joint motion to sever Haskell's claims against Tsakiris LP into a separate cause number. The trial court granted the joint motion and severed all claims between Haskell and Tsakiris LP into the cause number underlying this appeal.

The case proceeded to a jury trial. After both sides closed, Tsakiris LP moved for a directed verdict based, in part, on the statute of frauds. The trial court denied the motion for directed verdict, and the jury returned findings in favor of Haskell.

Tsakiris LP thereafter moved for judgment notwithstanding the verdict (JNOV), again based, in part, on the statute of frauds. The trial court denied the motion for JNOV and signed a final judgment in favor of Haskell.

## Issue One

In its first issue, Tsakiris LP contends that the trial court erred in failing to grant its motion for JNOV based on the statute of frauds.

### A. Standard of Review

The standard of review for a trial court's denial of a motion for JNOV is "to determine whether the evidence conclusively proves a fact that establishes a party's right to a judgment as a matter of law." *Roberts v. Staples*, 644 S.W.3d 738, 742 (Tex. App.—Texarkana 2022, no pet.) (quoting *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 675 (Tex. App.—

Texarkana 2017, pet. denied)).  If so, then the trial court erred in denying the motion for JNOV.  *Id.*

## B.    Standing

In determining this issue, we must begin by addressing Haskell's argument that the statute of frauds was not available to Tsakiris LP as a basis to challenge the real estate transaction between Harris and him.   Haskell specifically contends that:  (1) a real estate transaction that violates the statute of frauds is voidable, not void; and (2) Tsakiris LP had no standing to assert the affirmative defense of the statute of frauds to challenge the transaction between Harris and him because Tsakiris LP was not a party to such transaction.

In *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex. 1972), the Texas Supreme Court stated:

> Although it is the general rule that a stranger to a contract cannot invoke the statute of frauds, *Murphy v. Johnson*, 439 S.W.2d 440, 443 (Tex. Civ. App.—Houston 1st 1969, no writ), the plaintiff in this case seeks to enforce its contract against [the defendant] Phillips, and [the defendant] Phillips' position is similar to that of a purchaser of land whose grantor has previously made a contract to sell to another.  In a suit by that other, the courts uniformly hold that the purchaser may assert the defenses which his grantor had. *Masterson v. Little*, 75 Tex. 682, 13 S.W. 154 (1890); *Sanborn v. Murphy*, 86 Tex. 437, 25 S.W. 610 (1894); *Franzetti v. Franzetti*, 124 S.W.2d 195 (Tex. Civ. App.—Austin 1939, writ ref'd); 49 Am. Jur. 889, Statute of Frauds § 592.

*"Moore" Burger, Inc.*, 492 S.W.2d at 938–39; *accord Richardson v. Iley*, 299 S.W.2d 187, 188–89 (Tex. App.—San Antonio 1957, writ ref'd n.r.e.) ("A grantee may set up the statute [of frauds] as against one who claims title under an oral contract with the grantor.").

Here, the evidence indicates that Tsakiris LP purchased the property in question from Harris but that Harris had previously agreed to sell such property to Haskell. In this suit by Haskell, Tsakiris LP, as a grantee of the property from Harris, therefore had standing to assert any defense to the alleged prior contract that Harris would have had standing to assert. *See "Moore" Burger, Inc.*, 492 S.W.2d at 938–39; *Richardson*, 299 S.W.2d at 188–89. Accordingly, while we agree with Haskell that a contract that violates the statute of frauds is voidable, not void, *see Troxel v. Bishop*, 201 S.W.3d 290, 300 (Tex. App.—Dallas 2006, no pet.); *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.*, 914 S.W.2d 179, 186 (Tex. App.—San Antonio 1995, writ denied), we conclude that Tsakiris LP, as a grantee of the property from Harris, had standing to assert the affirmative defense of the statute of frauds to challenge the prior real estate transaction between Haskell and Harris. *See "Moore" Burger, Inc.*, 492 S.W.2d at 938–39; *Richardson*, 299 S.W.2d at 188–89.

## C.   Statute of Frauds

Having concluded that the statute of frauds was available to Tsakiris LP as a basis to challenge the transaction between Haskell and Harris, we next

address Tsakiris LP's contention that the real estate transaction between Haskell and Harris did, in fact, violate the statute of frauds.

The party pleading the statute of frauds bears the initial burden of establishing its applicability. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013) (citing TEX. R. CIV. P. 94). Here, Tsakiris LP pleaded the statute of frauds as an affirmative defense and thus had the initial burden to establish its applicability. *See id.* Whether a contract comes within the statute of frauds is a question of law, which we review *de novo*. *Id.* at 642.

A contract for the sale of real estate is subject to the statute of frauds. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4). A contract for the sale of real estate is therefore not enforceable unless it is (1) in writing and (2) signed by the person to be charged with the contract or by someone lawfully authorized to sign for him. *Id.* Moreover, to satisfy the statute of frauds,

> a conveyance of real property must contain a sufficient description of the property to be conveyed. A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular lands to be conveyed may be identified with reasonable certainty.

*AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008); *Reeder v. Curry*, 426 S.W.3d 352, 359 (Tex. App.—Dallas 2014, no pet.) (quoting *AIC Mgmt.*, 246 S.W.3d at 645); *accord Fears v. Tex. Bank*, 247 S.W.3d 729, 735–36 (Tex. App.— Texarkana 2008, pet. denied). Even when "[t]he record leaves little doubt that the parties knew and understood what property was intended to be conveyed,

. . . the knowledge and intent of the parties will not give validity to the contract, and neither will a plat made from extrinsic evidence." *Morrow v. Shotwell*, 477 S.W.2d 538, 540 (Tex. 1972) (citations omitted); *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (quoting *Morrow*, 477 S.W.2d at 540).

Tsakiris LP argues that the agreement between Haskell and Harris was not in writing as required by the statute of frauds. We agree. Haskell testified that he and Harris made an agreement for the purchase of the property in question, but the evidence showed that neither a purchase and sale agreement regarding the purchase of the property nor a deed conveying the property was ever executed. Accordingly, we conclude that the evidence conclusively proved that the real estate agreement between Haskell and Harris violated the statute of frauds and was consequently unenforceable as a matter of law unless an exception to the statute of frauds applied. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4); *AIC Mgmt.*, 246 S.W.3d at 645; *Roberts*, 644 S.W.3d at 742.

## D.    Exception

Having concluded that the real estate agreement between Haskell and Harris violated the statute of frauds, we finally turn to Tsakiris LP's contentions that: (1) Haskell waived the applicable exception to the statute of frauds because he failed to obtain a jury finding on it; and (2) even if the applicable exception was not waived, the undisputed evidence conclusively

disproved the exception. Haskell counters that the exception would fully apply to his purchase of the real property because he fulfilled all three elements of the exception, *i.e.*, he paid the consideration in full for the property; he took possession of the property; and he made valuable use of the property without any objection from Harris. Assuming without deciding that Haskell did not waive the applicable exception to the statute of frauds by failing to obtain a jury finding on it, we agree with Tsakiris LP that the evidence conclusively disproved the applicability of the exception.

Once the party pleading the statute of frauds meets its initial burden of establishing its applicability, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the statute of frauds. *Dynegy, Inc.*, 422 S.W.3d at 641. Because Tsakiris LP conclusively proved that the real estate agreement between Haskell and Harris violated the statute of frauds, Haskell had the burden to establish an exception that would take the agreement between Harris and him out of the statute of frauds. *See id.*

An oral contract for the purchase of real property is enforceable, despite the statute of frauds, if the purchaser: (1) pays the consideration; (2) takes possession of the property; and (3) makes permanent and valuable improvements on the property with the consent of the seller, or without such improvements, other facts are shown that would make the transaction a fraud

on the purchaser if the oral contract was not enforced. *Boyert v. Tauber*, 834 S.W.2d 60, 63 (Tex. 1992); *Hooks v. Bridgewater*, 111 Tex. 122, 126–27, 229 S.W. 1114, 1116 (1921). "Each of these three elements is indispensable, and they must all exist." *Hooks*, 111 Tex. at 127, 229 S.W. at 1116.

Tsakiris LP argues here, in part, that the evidence conclusively disproved the third element because the evidence conclusively established that Haskell made no improvements to the property in question. We agree.

Here, Haskell confirmed in his testimony that the use of the property did not change between the time that Harris owned it and the time that he owned it. Haskell testified that when he purchased the property, it was vacant land that was being farmed by a lessee and that, after he purchased the property, it continued to be farmed by the same lessee. Haskell confirmed that he did not move onto the property or build any fences, buildings, or structures of any kind on the property. When asked if he did anything to the property after he purchased it, Haskell simply replied, "I cut the for sale sign down on it."

Haskell nevertheless argues that the evidence showed that he made valuable use of the property, without any objection from Harris, by allowing the land to be farmed under lease. But allowing the land to continue being farmed under lease, exactly as it was before Haskell purchased the property, is not evidence of "permanent and valuable improvements on the property." *See Boyert*, 834 S.W.2d at 63 (citing *Hooks*, 111 Tex. at 126–27, 229 S.W. at

1116); *cf. Burrus v. Reyes*, 516 S.W.3d 170, 183–85 (Tex. App.—El Paso 2017, pet. denied) (evidence was factually sufficient to support jury's finding that plaintiff made valuable and permanent improvements to property when evidence showed plaintiff installed fence around lot, built shed, added rooms and fixtures, poured concrete slab, and planted trees). Furthermore, the Texas Supreme Court has explained:

> There is no fraud in refusing to enforce the contract where only the consideration is paid. The value of the consideration may in law action be recovered. Nor where only possession of the premises is given. In such case there is no performance by the purchaser of any obligation. Nor even where there is both payment of the consideration and possession; without valuable and permanent improvements made on the faith of contract, or their equivalent. Merely the transfer of the possession by the vendor could create no estoppel against him. A transfer of the possession of the soil affords no presumption of a sale of the fee. As said by Judge Moore in Ann Berta Lodge v. Leverton, 42 Tex. 18, to permit a person who can show no other act done beyond the transfer of the possession of the soil from the owner to himself, to enforce an oral agreement for the sale of the fee, would practically repeal the statute of frauds and let in all the mischiefs it was intended to guard against.

*Hooks*, 111 Tex. at 128, 229 S.W. at 1117.

Accordingly, we conclude that the evidence conclusively disproved the third element of the exception. *See id.*, 111 Tex. at 127, 229 S.W. at 1116.

During oral argument, Haskell additionally raised the contention that the statute of frauds could not apply in this case because the jury found that Tsakiris LP purchased the property in question with actual notice of Haskell's prior purchase of the property. But Tsakiris LP's notice is irrelevant to the

issue of whether the agreement between Haskell and Harris satisfied the statute of frauds. In fact, as indicated above in the discussion regarding standing, one must generally be a party to a contract or conveyance to challenge such contract or conveyance under the statute of frauds. *See "Moore" Burger, Inc.*, 492 S.W.2d at 938–39; *MEI Camp Springs, LLC v. Clear Fork, Inc.*, 623 S.W.3d 83, 92 (Tex. App.—Eastland 2021, no pet.).

Having determined that (1) Tsakiris LP had standing to assert the statute of frauds; (2) the evidence conclusively proved that the real estate agreement between Haskell and Harris violated the statute of frauds; and (3) the evidence conclusively disproved the applicability of the exception to the statute of frauds, we conclude that the agreement between Haskell and Harris was unenforceable as a matter of law. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(4); *AIC Mgmt.*, 246 S.W.3d at 645; *Roberts*, 644 S.W.3d at 742. Accordingly, we further conclude that the trial court erred in failing to grant Tsakiris LP's motion for JNOV based on the statute of frauds. *See Roberts*, 644 S.W.3d at 742. Tsakiris LP's first issue is sustained.

### Issues Two, Three, Four, Five, and Six

Having sustained Tsakiris LP's first issue, we need not reach its second, third, fourth, fifth, and sixth issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

In light of the foregoing, we reverse the trial court's judgment and render judgment that Haskell take nothing on his claims against Tsakiris LP.

_____
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  May 28, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Senior Justice Davis[2]
Reversed and rendered
CV06



---

[2] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Texas.