GREAT NORTHERN ENERGY,
INC., Appellant

v.

CIRCLE RIDGE PRODUCTION,
INC., Appellee

No. 06–16–00015–CV

Court of Appeals of Texas,
Texarkana.

Submitted: November 21, 2016

Decided: March 22, 2017

Rehearing Denied May 2, 2017

Supplemental Opinion May 3, 2017

William J. Gardner, William J. Gardner, PC, Longview, TX, for appellant.

Dean A. Searle, Ronan S. Searle, Searle & Searle, PC, Michael T. Runyan, Runyan Law Firm, PC, Marshall, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

1. *See infra* note 3.

## OPINION

Opinion by Justice Burgess

This case involves a complicated dispute between Circle Ridge Production, Inc. (Circle Ridge), and Kevin Stephens against Great Northern Energy, Inc. (Great Northern), arising out of the sale and foreclosure of certain oil and gas interests in Harrison County. We affirm the trial court's judgment in part and reverse in part.

### I. Introduction

#### A. Summary of the Dispute

Briefly, Circle Ridge and Stephens sold certain oil and gas leases referred to by the parties as the O'Benco leases[1] to Great Northern in exchange for a $700,000.00 promissory note, a $180,000.00 cash payment to Circle Ridge, and a $20,000.00 cash payment to Stephens. The promissory note was secured by a deed of trust, listing Dean A. Searle as trustee and both Circle Ridge and Stephens as the "beneficiary [sic]." After the sale, Stephens agreed with Great Northern to sell his undivided interests in the O'Benco leases to Great Northern in consideration for receiving stock in Rangeford Resources. However, the Rangeford Resources agreement never materialized.

Subsequently, Great Northern defaulted on the promissory note, and Circle Ridge instituted foreclosure of the O'Benco leases against Great Northern. Great Northern's interests in the O'Benco leases were sold at public auction, and Circle Ridge acquired all of Great Northern's interests in the O'Benco leases by virtue of its winning bid. However, Great Northern continued its physical possession of the wells included in the O'Benco leases despite the foreclosure. Great Northern took the posi-

tion that because Stephens had assigned his interests in the O'Benco leases to it as part of the Rangeford Resources agreement, and because the deed of trust listed both Circle Ridge and Stephens as the "beneficiary [sic]," Circle Ridge could not institute foreclosure by itself. Circle Ridge and Stephens asserted that Stephens never assigned his interests in the O'Benco leases to Great Northern because the Rangeford Resources agreement was never completed.

Both parties filed suit, and the two suits were ultimately consolidated in the 71st Judicial District Court of Harrison County. The case proceeded to trial on Circle Ridge's claims for trespass to try title and breach of contract against Great Northern as well as Great Northern's claims against Circle Ridge and Stephens for breach of contract and breach of the duty of good faith and fair dealing and a competing claim of trespass to try title. The trial court granted a directed verdict in favor of Stephens on Great Northern's breach of contract claim and granted both Stephens and Circle Ridge directed verdicts on Great Northern's breach of the duty of good faith and fair dealing claims. The trial court also granted a directed verdict in favor of Circle Ridge on its own breach of contract claim against Great Northern.

The case then proceeded to trial before the jury and Great Northern's wrongful foreclosure claim. The jury found in favor of Circle Ridge and against Great Northern.[2] Pursuant to the jury's verdict, and the trial court's directed verdicts, the trial court entered judgment quieting title to the oil and gas interests in Circle Ridge and awarding it $637,114.15 in damages for

breach of contract against Great Northern, together with attorney's fees and court costs. Great Northern filed this appeal.

## B. Issues on Appeal

On appeal, Great Northern argues that the trial court erred in (1) excluding evidence of an alleged assignment of Stephens' interest in the promissory note, (2) in granting the above-mentioned directed verdicts against Great Northern in favor of Circle Ridge, (3) in failing to grant a directed verdict in favor of Great Northern on its wrongful foreclosure claim against Circle Ridge, (4) in awarding $637,114.15 to Circle Ridge for breach of the promissory note, (5) in quieting title in favor of Circle Ridge, (6) in permitting opposing counsel to make certain comments during voir dire and closing argument, (7) in submitting the wrongful foreclosure questions to the jury, (8) in failing to grant its motions for mistrial, (9) in denying motions for new trial and judgment notwithstanding the verdict, and (10) in awarding $150,873.37 in attorney's fees.

## C. Resolution of Issues on Appeal

We affirm, in part, the trial court's judgment because we conclude that (1) the trial court did not abuse its discretion in making any of its evidentiary rulings related to the alleged assignment, (2) Great Northern did not preserve evidentiary challenges unrelated to the alleged assignment, (3) the motion for mistrial based on the trial court's evidentiary rulings was properly overruled, (4) Great Northern did not properly brief many of its challenges to the trial court's directed verdict ruling, (5) the properly briefed challenges to the

---

**2.** Circle Ridge's trespass to try title claim was not submitted to the jury. Nevertheless, the basis for that claim was that Circle Ridge had a superior title and right of possession to the O'Benco leases than did Great Northern. Be-

cause Circle Ridge's title to those leases was acquired via foreclosure, resolution of Great Northern's wrongful foreclosure claim also resolved the issue of whether Circle Ridge's title was superior to Great Northern's title.

trial court's directed verdict rulings are without merit, (6) the trial court's damage award was based on a stipulation by the parties, (7) the trial court properly quieted title in favor of Circle Ridge, (8) Great Northern failed to preserve complaints about (a) comments made during voir dire and closing argument, (b) challenges to the submitted jury charge, and (c) its appellate argument related to the trial court's denial of its motion for mistrial made during voir dire, and (9) the motions for new trial and judgment notwithstanding the verdict were properly denied. However, because attorney's fees were not properly segregated, we reverse the award of attorney's fees and remand the matter to the trial court for further proceedings consistent with this opinion.

## II. Factual Background and Procedural History

Billy Joe Briscoe and Doug Friedel are the only two shareholders of Circle Ridge. On May 17, 2012, in exchange for $10,000.00, O'Benco III, LP, assigned its decimal working interests and decimal revenue interests in several oil and gas leases located in Harrison County, Texas, which the parties in this case collectively refer to as the O'Benco leases,[3] to Circle Ridge and Stephens.

### A. Circle Ridge and Stephens Sell Their Interests in the O'Benco Leases to Great Northern

Shortly after Circle Ridge and Stephens began production on wells located in the O'Benco leases, they received a call from Great Northern's President, Joe Loftis, who expressed an interest in acquiring their decimal working and revenue interests in the O'Benco leases. As consideration for Great Northern's execution and delivery of a $700,000.00 promissory note, a $180,000.00 cash payment to Circle Ridge, and a $20,000.00 cash payment to Stephens, Circle Ridge and Stephens assigned to Great Northern the interests they had acquired in the O'Benco leases, subject to certain reservations not relevant to the main issues in this case.

The assignment and bill of sale was executed by Circle Ridge and Stephens on September 11, 2012.[4] It recited the promissory note as consideration and further stated,

[I]t is expressly agreed that the Assignors herein expressly reserve for themselves, their successors and assigns, the Vendor's Lien, as well as the superior title in and to the above described property, premises and improvements, against the above described property,

---

3. These oil, gas, and mineral leases cover approximately 1,200–1,300 acres situated in the W.H. Adams Svy, A–51, E. Little Svy., A–410, J. Blair Svy, A–100, J. White Svy., A–784 S.C. Dickerson, A–222, Benjamin Long, A–418, T.D. Wilson A–788, and T.D. Wilson Svy, A–811, surveys in Harrison County, Texas.

4. On March 1, 2012, Circle Ridge purportedly executed an assignment of its interests in the O'Benco leases to Great Northern. That assignment was purportedly signed by Briscoe on behalf of Circle Ridge and Loftis, on behalf of Great Northern. The assignment was notarized by Great Northern's Vice President, Ronald J. Abercrombie, but stated, "The foregoing instrument was acknowledged before

me ... by Joe Loftis, as President of Great Northern Energy, Inc., and Circle Ridge Production, LLC, both Texas corporations, on behalf of said corporations." Loftis had no authority to bind Circle Ridge, and Briscoe's signature was not properly acknowledged. Briscoe also testified that his signature on that document was forged. On September 11, 2012, Great Northern executed a withdrawal of the purported assignment because it "recognize[d] there were inadequacies in the execution of the assignment." The language of the withdrawal made clear that, as of September 11, 2012, "the full ownership of the leases [was] in Circle Ridge Production, Inc.[,] and Kevin Stephens."

premises and improvements until the above described Note and all interest thereon has been fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute, and to additionally secure Assignors in the payment of the Note, the Grantees have executed and delivered a Deed of Trust of even date herewith conveying the herein described property to Dean A. Searle, Trustee.

The promissory note was also executed on September 11, 2012, by Abercrombie. It provided that Great Northern would pay Circle Ridge and Stephens seventeen monthly installments of $38,000.00, plus an eighteenth installment of the remaining balance, beginning December 1, 2012, with each installment due on or before the first day of every month. The note also warned that a default in payment by Great Northern could result in the acceleration of the debt. The promissory note was secured by a document titled "DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF PRODUCTION, AND FINANCING STATEMENT OF OIL AND GAS PROPERTIES (INCLUDING AFTER ACQUIRED TITLE)," which we simply refer to as the deed of trust.

The deed of trust listed Dean A. Searle as the Trustee, and both "Circle Ridge Production, Inc. and Kevin Stephens" as the "Beneficiary [sic]," a fact which is critical to understanding the parties' arguments. The deed of trust, which also stated that Great Northern's default could result in the acceleration of the debt, provided, "Beneficiary shall have the right to assign all or a portion of its interest in this Deed of Trust to any subsequent holder of any portion of the Obligation." The deed of trust further specified that, in the event of default,

> Beneficiary may request Trustee to proceed with foreclosure. In that event Trustee is expressly authorized and empowered, and it shall be his duty, on request by Beneficiary, and to the extent permitted by applicable Law, to sell all or any part of the Mortgaged Property at one or more sales, as an entirety or in parcels, at the place or places and otherwise in the manner and on such notice as may be required by applicable Law, or in the absence of any requirement, as Trustee and/or Beneficiary may deem appropriate, and to make conveyance(s) to the purchaser or purchasers at the sale. Any sale of any part of the Mortgaged Property shall be made to the highest bidder or bidders for cash, at the courthouse door of, or at such other place as may be required or permitted by applicable Law in the county (or judicial district) in the state where the Lands included within the Mortgaged Property to be sold is located.[5]

It is undisputed that Great Northern did not pay the promissory note as required

---

**5.** Section 2.2(p) of the deed of trust stated, "[Great Northern] shall not, without the prior written consent of [Circle Ridge and Stephens], sell, trade, transfer, convey, assign, exchange, pledge, encumber, create any lien[,] ... or otherwise dispose of all or part of the Mortgaged Property, or any interest in the Mortgaged Property." However, on July 12, 2012, before Great Northern acquired Circle Ridge's and Stephen's interests in the O'Benco leases, it had already conveyed a working interest in the O'Benco leases to John O. Burns, who then subsequently conveyed the interest to WJ South Waskom # 1, LLC. On August 9, 2013, without obtaining permission from Circle Ridge or Stephens, Great Northern also recorded an assignment of ten percent of its working interest in the O'Benco leases to B. Charles and LaDonna A. Spradlin. At trial, Loftis testified that Great Northern did not have legal title to 72 ½ percent of the interests in the O'Benco leases as a result of these transfers.

and that its interests in the O'Benco leases were foreclosed upon.

**B. The Rangeford Resources/Rojo Burro Transaction**

Prior to the foreclosure, however, Stephens and Great Northern began investigating other business prospects involving the O'Benco leases. Great Northern proposed to include the O'Benco leases "in a package to be resold" to Rangeford Resources. In the fall of 2012, Great Northern discussed with Stephens the possibility of his participation in the sale of the O'Benco leases to Rangeford Resources. Briscoe testified that Stephens approached him to see if Circle Ridge would be willing to participate in the deal, but Circle Ridge declined. According to Stephens, he authorized his brother, Mike Stephens to look into the Rangeford Resources transaction.

As a result of negotiation with Great Northern, and in anticipation of Rangeford Resources' ultimate acquisition of the O'Benco leases, Stephens agreed to sell his undivided interest in the O'Benco leases to Great Northern in consideration for, among other things, Rangeford Resources stock. However, the Rangeford Resources transaction never materialized. At trial, the court excluded evidence of this transaction, including alleged assignments of interest in the O'Benco leases from Stephens to Great Northern arising out of the Rangeford Resources/Rojo Burro Transaction.

**C. Great Northern's Interests Are Foreclosed After it Fails to Pay the Promissory Note**

Great Northern failed to pay Circle Ridge and Stephens in a timely manner pursuant to the terms of the promissory note. According to Briscoe, Circle Ridge and Stevens gave Great Northern additional time to pay on two or three occasions, but eventually decided to proceed with foreclosure. Loftis testified that Great Northern had a good relationship with Stephens, who did not make a personal demand for payment on the promissory note after Great Northern failed to make timely payments. Yet, both Briscoe and Stephens testified that they each gave Searle permission to foreclose on Great Northern's interest in the O'Benco leases.

On August 2, 2013, Great Northern's attorney wrote to Searle proposing a solution to avoid the trustee's sale. The proposal stated that Great Northern would, among other things, pay $38,000.00 into Searle's trust account for Circle Ridge's benefit by August 5, 2013, and would pay all sums due and owing to Circle Ridge under the note by not later than September 15, 2013. On August 23, 2013, Searle responded by indicating that he would provide "a payoff statement for the Circle Ridge portion of the . . . note."

On October 11, 2013, Searle wrote to Great Northern "in connection with" Circle Ridge's "one-half (1/2) interest in a Promissory Note," advised Great Northern that the entire balance of the promissory note was accelerated, and provided notice of foreclosure of the entire interest. The letter informed Great Northern that it would be obligated to repay the indebtedness if the proceeds of the foreclosure sale were insufficient to pay the indebtedness and afforded it an opportunity to cure the delinquency. Although the letter did not make reference to Stephens or his portion of the indebtedness, it clarified that Searle would sell the property as trustee under the deed of trust in accordance with the terms of the deed of trust. The letter also informed Great Northern that it had the right to file suit if it believed that it was not in default, but Great Northern did not attempt to prevent the foreclosure.

Great Northern's interests were sold at public auction on November 5, 2013. Circle Ridge made a winning bid of $150,000.00 and, by way of a trustee's deed, obtained all of Great Northern's interest in the O'Benco leases. On December 13, 2013, Stephens officially filed an assignment of his interest in the promissory note to Circle Ridge. The evidence at trial established that Circle Ridge paid Stephens $200,000.00 in exchange for this transfer. Nevertheless, according to Briscoe, Great Northern continued its physical possession of the wells included in the O'Benco leases in spite of the foreclosure.

### D. Two Lawsuits Are Consolidated

Great Northern sued Circle Ridge, Briscoe, and Stephens in the 116th Judicial District Court of Dallas County, Texas, asserting various causes of action. Subsequently, Circle Ridge sued Great Northern, Loftis, and Abercrombie in the 71st Judicial District Court of Harrison County, Texas, to quiet title to the interests in the O'Benco leases. On September 18, 2014, the 116th Judicial District Court of Dallas County granted a transfer of venue to Harrison County, and the cases were consolidated for trial.

In its live pleading, a third amended petition, Great Northern, Loftis, and Abercrombie argued that the December 13, 2013, assignment from Stephens to Circle Ridge was invalid because Stephens had purportedly executed another assignment to Great Northern on December 1, 2012, in exchange for valuable consideration. Great Northern also alleged that the foreclosure was invalid because the trustee, Dean Searle, purported to act on behalf of Stephens and Circle Ridge, but could not act on Stephens' behalf in light of the assignment of his interest to Great Northern. Great Northern also asserted (1) a cause of action against Stephens for breach of an agreement to deliver two pump jacks and 500 joints of 3 ½ -inch tubing, (2) causes of action against Circle Ridge and Stephens for unjust enrichment and breach of an implied covenant of good faith and fair dealing for their failure to deliver "the bargained for rights to well bores and oil and gas lease interests," (3) causes of action against Circle Ridge and Stephens for negligent misrepresentation,[6] (4) a cause of action against Stephens for fraud as a result of statements made in an affidavit of forgery accusing Great Northern of forging his signature on an alleged assignment that it filed in Harrison County's property records, (5) a cause of action against Circle Ridge, Briscoe, and Stephens for tortious interference with contract as a result of a conspiracy to "create the Affidavit of Forgery ... in order to defraud Great Northern," (6) a cause of action against Circle Ridge for wrongful foreclosure, based on the premise that it could only foreclose on one-half of its undivided interests due to Stephens' purported assignment to Great Northern, and (7) a cause of action asserting trespass to try title.

In response, Circle Ridge filed a trespass to try title claim. It argued that the purported assignment from Stephens to Great Northern filed in Harrison County was a forgery, that Stephens never signed the assignment because he did not receive the promised consideration for the assignment, and that any conveyances from Great Northern to others prior to the time Great Northern acquired any interest in the O'Benco leases were void. Circle Ridge also filed a breach of contract claim for Great Northern's failure to perform under the deed of trust and causes of action for civil conspiracy for the forgery. Circle

6. The pleading did not specify the alleged negligent misrepresentation.

Ridge also alleged spoliation of evidence and sought attorney's fees.[7]

## E. Exclusion of Evidence

During the jury trial, the court excluded evidence related to the Rangeford Resources/Rojo Burro transaction. Great Northern complained that the trial court's evidentiary rulings prevented it from effectively presenting its case. Specifically, Great Northern claims it was effectively prevented from arguing that Stephens had assigned any interest in either the O'Benco leases or the promissory note. We discuss a few key items at this juncture to give context to the parties' appellate arguments.

## 1. The Excluded Letter of Agreement

One of the documents excluded from evidence was entitled "LETTER OF AGREEMENT KEVIN AND MIKE STEPHENS INTEREST PURCHASE OBENCO AND ROJO BURRO, LLC." The Letter of Agreement, which Stephens' signed, provided that Stephens and Mike (1) "agree to sell [to Great Northern] any and all interests held or otherwise controlled by them in the leasehold commonly known as OBENCO ... includ[ing] all interest in and to all debts payable to [Stephens or Mike] as of this date for which [Great Northern] is obligated," [8] and (2) "agree to sell all interests o[f] Rojo Burro Energy Services, LLC, A Texas Limited Liability Company." The Letter of Agreement further stated, "The leasehold, wells[,] and all other rights are also hereby transferred to [Great Northern] by assignment of that interest to be filed of record

in Harrison County, Texas[,] on closing of this transaction."

As consideration, Stephens was to receive $125,000.00, Mike was to receive $10,000.00, and both were to receive shares of Rangeford Resources stock. The body of the Letter of Agreement listed its effective date as December 1, 2013, instead of December 1, 2012.

## 2. The Excluded Note Assignment

■ Another document excluded from evidence was labeled "PURCHASE OR NOTE AND FINANCIAL INSTRUMENT KEVIN STEPHENS UNTO GREAT NORTHERN ENERGY, INC. OBENCO PROPERTIES" and was signed by Stephens on December 1, 2012 (Note Assignment). In the Note Assignment, Stephens gave to Great Northern all of his "right, title[,] and interests in and to that certain debt instrument wherein [Stephens was] a lender unto [Great Northern] under a note and according to the ... stated terms and conditions." [9] The Note Assignment provided, "[Stephens] does hereby, effective December 1st, _2013_, sell and grant his undivided portion, whatever such portion may be, but not less than 50% of, that certain note due from [Great Northern] unto [Stephens] and Circle Ridge Production, Inc., jointly, and that certain Deed of Trust attached hereto." (Emphasis added). Abercrombie notarized the document in the following manner:

I, the below signed Notary Public in and for the State of Texas, did witness the above named parties execute this document as their free and voluntary act on this date. I did enter the names of the parties into the required notary ledger

---

**7.** Circle Ridge had also filed, but later nonsuited, claims for negligence and violation of the Texas Theft Liability Act.

**8.** There was no evidence demonstrating that Mike had any interest in the O'Benco leases.

**9.** The Note Assignment did not further describe the September 11, 2012, promissory note.

and did identify these parties as required by law.[10]

### 3. The Filed Assignment that Was Not Offered Into Evidence

In its pleadings, Great Northern argued that Stephens executed an assignment on December 1, 2012, which it filed of record in Harrison County (Filed Assignment). Great Northern argues that by virtue of the Filed Assignment, Stephens, "individually, and as any portioned owner of Circle Ridge Production, Inc. if any," assigned "any and all right, title and interests" in the working interests in O'Benco leases. The Filed Assignment further stated,

> This assignment includes and is not limited to that certain debt instrument by and between the parties related to these leases and wells and does hereby convey those rights unto Great Northern Energy, Inc. without restriction nor offset of

any kind, and does hereby represent notice to the public that the portion of said debt is paid in full as of this date and time as to the Kevin Stephens interest therein.

The Filed Assignment was purportedly signed by "K Stephens, Individual." It was notarized by Abercrombie, but the acknowledgement stated, "I did witness one K Stephens sign this assignment after identifying him as one in the same as the person signing this document and entering his name in the notary register as required by state law."

The Filed Assignment was recorded on April 1, 2013. On February 4, 2014, Stephens, who owned no interest in Circle Ridge, executed an affidavit of forgery averring that he never signed the Filed Assignment. The Filed Assignment was never offered into evidence at trial.[11]

---

10. "[O]ne who is an interested party to an instrument may be disqualified from functioning as a notary public." *Terrell v. Chambers*, 630 S.W.2d 800, 802 (Tex. App.–Tyler 1982, writ ref'd); *see* 54 TEX. JUR. 3D *Notaries Public, Etc.* § 25 (2016). "For public policy reasons, a person who is financially and beneficially interested in a transaction is disqualified to take an acknowledgment concerning the transaction. For instance, a person is disqualified if he or she is pecuniarily interested in upholding the instrument after its execution or has a pecuniary interest in the consideration passing." 1 TEX. JUR. 3D *Acknowledgments, Etc.* § 16 (2016).

11. Great Northern's brief states, "[W]hen it came time to put up or shut up, concerning Circle Ridges [sic] allegations that the Assignment of Kevin Stephens was a forged document, Circle Ridge tucked its tail and ran from any effort to prove the veracity of those allegations through competent evidence." Yet, the record unequivocally established that Circle Ridge never attempted to offer the Filed Assignment, thus removing the need for Circle Ridge to present evidence that the Filed Assignment was the result of forgery. During a bench conference, the following transpired:

[Counsel for Circle Ridge]: Your Honor, this is the assigned for bill of sale on December 1st, 2012. We have a number of legal arguments as to why that document is not valid.

I'm not exactly sure how the Court wants to approach this document, because if it's not legally invalid as being either violative of the statute of fraud or for a language of proper acknowledgment, then I may need to do my case-in-chief and go into consideration issues with respect to Mr. Stephens and/or his signature. I'm more than happy to make that. I just wasn't sure—I don't even want the document in. I don't think it even comes in. There's no evidence that I want to use it, but I actually want a ruling from the Court or a judgment from the Court on that if it's invalid and our title should be quieted with respect to that document.

[Counsel for Great Northern]: That's the part of it I don't see how you—

THE COURT: You just need to question Mr. Stephens or whoever you're going to about this document. I'll rule on the validity after I hear the evidence on all of the issues with regard to that document.

[Counsel for Great Northern]: Can we take a—I understand about the admission,

## F. The Result

In addition to excluding evidence of the Rangeford Resources/Rojo Burro transaction, the trial court entered directed verdicts on Great Northern's claims for unjust enrichment, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, tortious interference, and fraud. The trial court also granted a motion for directed verdict in favor of Circle Ridge on its breach of contract claim after Great Northern's counsel (1) admitted that Great Northern was "a little behind" on payments under the promissory note, and (2) entered into the following stipulation: "that the amount of the note between Circle Ridge and Kevin Stephens as lender and Great Northern as borrower ... [a]s of ... 22nd of October 2015, if Great Northern did not buy Kevin Stephens' one-half of the note, the balance owed today, including interest up until today, is in the amount of $637,114.15."

The trial court's directed verdicts left the jury to decide only the issue of wrongful foreclosure, namely whether Great Northern established that there was a defect in the foreclosure sale and whether Great Northern established that Circle Ridge paid a grossly inadequate sales price at the foreclosure sale. The jury returned a negative answer to both questions. By agreement, the issue of attorney's fees was tried to the court.

In its final judgment, the trial court recited the directed verdicts it had entered during trial which favored both Circle Ridge and Stephens, and it entered a take-nothing judgment against Great Northern.

---

but I think his question is admission, whether it's admissible or not.

[Counsel for Circle Ridge]: Well, and that's the—I'm not sure that I understand the Court's ruling, but—

THE COURT: On its face, I believe it is admissible based on the proper predicate being laid, all right?

[Counsel for Circle Ridge]: So you think it's admissible, but it's not—

THE COURT: It may be an invalid document after I hear the testimony regarding whether or not it's admissible or not admissible.

[Counsel for Circle Ridge]: One of the arguments, Your Honor, just to be clear, if I—if I said it already, I apologize, but one of our positions with respect to this document is that it violates the statute of fraud. Of course, with respect to the statute of fraud, Your Honor, that is a purely legal question for which there would be no evidence for the Court to consider.

THE COURT: I will be continuing to look at that, but I want to hear everything with regard to each one of the defenses or issues that you have with that, all right?

[Counsel for Circle Ridge]: Thank you, Your Honor.

[Counsel for Great Northern]: Mr. Runyan, I think we've got to mark it as a number.

THE COURT: He hasn't offered it yet.

[Counsel for Great Northern]: I understand that, but we'll have to have some designation for it.

[Counsel for Circle Ridge]: Well, I will mark it as—the document we were just talking about as—with respect to Plaintiff's Exhibit 12, Your Honor, that's the December 1st, 2012 assignment that I just presented to the Court that I have now marked as Plaintiff's Exhibit 12.

For the record, we're not tendering this document as evidence, but we're, rather, requesting a ruling from the Court that as a matter of law, that it is violative of the statute of fraud so that our—so that our objection based on that ground to when documents are even relevant would be considered at that place and time.

And I understand the Court—the Court's ruling, and we'll proceed, but I wanted to mark it.

As established by the record, the Filed Assignment was marked by Circle Ridge's counsel solely for the purpose of "requesting a ruling from the Court that ... it is violative of the statute of fraud[s]" and was never offered by any party. Accordingly, the trial court did not rule on its admission or exclusion.

The judgment (1) declared that Great Northern had defaulted under the terms of the promissory note, (2) quieted title in Circle Ridge as a result of the trustee's sale,[12] and (3) provided that Circle Ridge was entitled to immediate possession of the wells included in the O'Benco leases. The judgment further provided that Great Northern was to pay Circle Ridge $637,114.15, the amount owed under the terms of the promissory note as of October 22, 2015, $150,873.37 in attorney's fees, $8,756.90 as costs of suit, and $78,798.75 as costs of collection.

From this judgment, Great Northern appeals.

### G. Great Northern's Arguments on Appeal

Great Northern advances a total of fifty-three complaints grouped into eleven categories. Among these complaints, Great Northern argues that the trial court erred in excluding a majority of its evidence, improperly granted directed verdicts against it, erred in overruling its motions for mistrial and objections to voir dire and closing argument, failed to submit properly requested jury instructions, and erred in quieting title in Circle Ridge and awarding it attorney's fees.

### III. The Trial Court Did Not Abuse its Discretion in Excluding Great Northern's Evidence

Great Northern first argues that the trial court abused its discretion in excluding documents and testimony related to the negotiation of the Rangeford Resources/Rojo Burro transaction and an alleged assignment made by Stephens as a result of those negotiations. Because we conclude that there was no evidence of any actual assignment by Stephens to Great Northern, we conclude that the trial court

did not abuse its discretion in making its evidentiary rulings.

### A. Standard of Review

■■■ "We review a trial court's evidentiary ... rulings for abuse of discretion." *Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 727 (Tex. 2016) (citing *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015) ("We review a trial court's exclusion of evidence for an abuse of discretion."). "A trial court abuses its discretion when it acts without regard for any guiding rules." *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

■■■ We "must uphold the trial court's [decision to exclude evidence] if there is any legitimate basis for the ruling" or "if it is correct under any legal theory," "even if that ground was not raised in the trial court." *Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012) (citing *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)); *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411 (Tex. App.–Dallas 2006, pet. denied); *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (citing *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) (op. on reh'g)); *see Calhoun/Holiday Place, Inc. v. Wells Fargo Bank, N.A.*, No. 01-14-00872-CV, 2016 WL 3272216, at *4 (Tex. App.–Houston [1st Dist.] June 14, 2016, no pet.); *In re Block Fin. Advisors, Inc.*, 262 S.W.3d 896, 899 (Tex. App.–Houston [14th Dist.] 2008, orig. proceeding) ("Because a trial court cannot abuse its discretion in reaching a correct result for the wrong reasons, we will uphold the trial court's order on any

12. *See supra* note 2.

ground supported by the record."); *Edgeworth v. Wilson*, 113 S.W.3d 559, 562 (Tex. App.–Texarkana 2003, no pet.).[13]

### B. Preliminary Matters

#### 1. The Promissory Note is Not a Negotiable Instrument

■ Great Northern argues that, because the promissory note was payable to Circle Ridge *and* Kevin Stephens, it was payable to all of them and could only be enforced by all of them. Although Stephens testified that he gave permission to Searle to foreclose, Great Northern argues that Stephens had assigned his one-half undivided interest in the promissory note to Great Northern and that Great Northern did not provide permission for the foreclosure. Great Northern further argues that, since the foreclosure was made pursuant to the deed of trust, of which Circle Ridge and Stephens were joint beneficiaries, the foreclosure was wrongful, or, in the alternative, resulted in foreclosure of only Circle Ridge's one-half undivided interest in the O'Benco leases.

Great Northern cites to Section 3.110 of the Business and Commerce Code in support of this argument.[14] As a preliminary matter, we conclude that the promissory note in this case was not negotiable. Sec-

tion 3.110 of the Business and Commerce Code states,

> If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged, or enforced by any or all of them in possession of the instrument. If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them.

TEX. BUS. & COM. CODE ANN. § 3.110(d) (West 2002).

■ "The negotiability of an instrument is a question of law." *Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 248 (Tex. App.–Houston [14th Dist.] 2011, no pet.) (citing *FFP Mktg. Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 407 (Tex. App.–Fort Worth 2005, no pet.)). Chapter 3 of the Business and Commerce Code only "applies to negotiable instruments." TEX. BUS. & COM. CODE ANN. § 3.102 (West 2002). Under Chapter 3,

> "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, ... if it: ...
>
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

13. Additionally, under the Rules of Appellate Procedure, appellate "[b]riefs are to be construed liberally," *Tully v. Citibank (S. Dakota) N.A.*, 173 S.W.3d 212, 217 n.4 (Tex. App.–Texarkana 2005, no pet.) (citing TEX. R. APP. P. 38.9), and "[t]he statement of an issue or point [in an appellant's brief] will be treated as covering every subsidiary question that is fairly included," TEX R. APP. P. 38.1(f). Moreover, "[t]he court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal." TEX. R. APP. P. 47.1. Neither party challenges the applicability of Section 3.110 of the Texas Business and Commerce Code. However,

Great Northern asserts that, under Section 3.110, Circle Ridge wrongfully foreclosed on the promissory note because Stephens had already assigned his interest in the note to Great Northern. Whether Section 3.110 is applicable to the promissory note is a "subsidiary question that is fairly included" in Great Northern's points of error based on wrongful foreclosure.

14. Conversely, Circle Ridge argues that Section 3.110 rendered any alleged assignment by Stephens invalid because the promissory note could not be negotiated without Circle Ridge.

(A) an undertaking or power to give, maintain, or protect collateral to secure payment;

(B) an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

(C) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

TEX. BUS. & COM. CODE ANN. § 3.104(a)(3) (West Supp. 2016). While promissory notes can be and are often referred to as negotiable instruments, they can only be negotiable instruments under Chapter 3 if they constitute "an unconditional promise or order to pay a fixed amount of money." *Id.* Whether an instrument meets this standard is governed by Section 3.106, titled "Unconditional Promise or Order." TEX. BUS. & COM. CODE ANN. § 3.106 (West Supp. 2016).

Section 3.106 states that "a promise or order is unconditional unless it states (i) an express condition to payment, (ii) that the promise or order is subject to or governed by another record, or (iii) that rights or obligations with respect to the promise or order are stated in another record." TEX. BUS. & COM. CODE ANN. § 3.106(a). Comment 1 to Section 3.106 explains,

> For example, a promissory note is not an instrument defined by Section 3–104 if it contains any of the following statements: 1. "This note is subject to a contract of sale ...." 2. "This note is subject to a loan and security agreement ...." 3. "Rights and obligations of the parties with respect to this note are stated in an agreement ... between the payee and maker of this note." It is not relevant whether any condition to payment is or is not stated in the writing to

which reference is made. The rationale is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment.

TEX. BUS. & COM. CODE ANN. § 3.106 cmt. 1 (West 2002).

▮▮▮ A review of the promissory note in this case establishes that it does not meet the criteria of Section 3.106. The promissory note states,

> This Note shall be secured by a Deed of Trust, Security Agreement and Financing Statement, and said Deed of Trust, Security Agreement and Financing Statement are incorporated herein by this reference for all purposes as if fully set forth at length herein. The Promissory Note is specifically agreed to be subject to the terms of said Deed of Trust, Security Agreement and in the event of default thereon, the same shall constitute an event of default under this Note, and shall, in any case, at the option of the holder hereof, mature the entire indebtedness evidenced hereby and secured by and hereinbefore mentioned Deed of Trust and Security Agreement .... THIS DOCUMENT AND ALL OTHER DOCUMENTS RELATING TO THIS LOAN CONSTIUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES.

Because the promissory note contains statements such as the ones specified under Comment 1 to Section 3.106, the promissory note is not a negotiable instrument under Section 3.104.[15] *See Guniganti,* 346 S.W.3d at 249–50. Accordingly, Chapter 3

---

15. Comment 2 to Section 3.104 further provides, "Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money. The use of words of negotiability in such contracts would be an aberration." TEX. BUS. & COM. CODE ANN. § 3.102 cmt. 2.

of the Business and Commerce Code, including Section 3.110, does not apply to this case. Instead, contract law governs this dispute.[16] *FFP Marketing Co.*, 169 S.W.3d at 409.

The promissory note provided that a default in payment by Great Northern could result in the acceleration of the entire debt, and the deed of trust allowed the trustee to foreclose and sell "all or any part of the Mortgaged Property . . . as an entirety." According to the provisions of the deed of trust, Great Northern's obligation was secured by property as described by these terms of the deed of trust:

> [Great Northern] . . . conveys to Trustee . . . with power of sale, the real and personal properties, rights, titles, interests and estates described or to which reference is made in paragraphs I through VI below, inclusive, whether now owned by [Great Northern] or hereafter acquired by [Great Northern] (collectively the "Mortgaged Property"):
>
> I. Oil and Gas Leases and Other Properties. All of those oil and/or gas and mineral leases, lands, interests and other properties . . . which are described and/or to which reference may be made on Exhibit "A" . . . .[17]

Exhibit A to the deed of trust described various properties, including the O'Benco leases which were the subject of the assignment of sale from Circle Ridge and Stephens to Great Northern. Thus, the foreclosure of all of Great Northern's interest in the O'Benco leases was contemplated by agreement of the parties.

However, Great Northern contends that the foreclosure was wrongful because it acquired Stephens' interest in the promissory note. We now address whether there was any evidence that Stephens actually assigned his interest in the promissory note.

## 2. There Was no Assignment from Stephens to Great Northern

■ We have previously explained that the Filed Assignment was never offered into evidence. Thus, we must determine whether the Letter of Agreement or Note Assignment constituted an actual assignment of Stephens' interest in either the note or the O'Benco leases.

The Letter of Agreement, filed as a part of Great Northern's offer of proof, stated that Stephens agreed to sell, effective as of December 1, 2013, his interests in both the O'Benco leases and the promissory note and that his rights and interests in both would be transferred to Great Northern "on closing of this transaction." The Letter of Agreement recited cash payments and payment of Rangeford Resources stock as consideration. The Note Agreement stated that Stephens would, "effective December

**16.** In construing a written contract, our primary concern is to ascertain the intentions of the parties as expressed in the instrument. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Craig Sessions, M.D., P.A. v. TH Healthcare, Ltd.*, 412 S.W.3d 738, 742 (Tex. App.–Texarkana 2013, no pet.). A contract term is given its plain and ordinary meaning unless the instrument indicates a different meaning is intended by the parties. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *Craig Sessions, M.D., P.A.*, 412 S.W.3d at 742. The construction of an unambiguous contract is a question of law which we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

**17.** Because the deed of trust contains an after-acquired property clause, Circle Ridge argues that it could foreclose on any interest allegedly assigned by Stephens to Great Northern. Because we determine, as explained below, that Stephens did not complete any assignment, we need not address this argument.

1st, 2013, sell and grant his undivided portion" of the promissory note and provided that Great Northern would assume Stephens' role under the promissory note "in all forms and under all terms therein and as of closing this agreement *shall* have the rights of the contracts, notes[,] and other instruments." By their plain terms, both documents, which contemplated a closing, constituted agreements to sell, transfer, and convey at a future closing.[18]

"An assignment is to be distinguished from a promise." 4 ARTHUR L. CORBIN, *Corbin on Contracts* § 879 at 530 (1951). "The former is a transfer or conveyance of a right against some third party ... A promise, on the other hand, is an expression of intention by the promisor to render some performance in the future." *Id.* "A contract to make a future assignment of a right, or to transfer proceeds to be received in the future by the promisor, is not an assignment." RESTATEMENT (SECOND) OF CONTRACTS § 330 (1981). "As to a right in existence, it is a question of interpretation whether the obligee manifests an intention to make a present transfer or only an intention to bind himself to make a future transfer." *Id.* cmt.

The Letter of Agreement and Note Agreement both contemplated a closing, and at trial, it was undisputed that the Rangeford Resources transaction did not close and that Stephens never received Rangeford Resources stock, which was consideration for the agreement.[19] Accordingly, in signing the Letter of Agreement and the Note Agreement, Stephens manifested only an intention to make a future transfer.

Furthermore, at trial, Great Northern conceded that Stephens had not assigned any interest in the O'Benco Leases, essentially admitting that the Letter of Assignment was not an actual assignment. Instead, it relied only on the Note Assignment, claiming that Stephens had only assigned an interest in the promissory note. During an offer of proof, Stephens explained, "I was going to participate with [Great Northern], pose a deal that was going to happen with Rangeford Resources that never materialized." Briscoe also testified that he did not hear from Stephens about any alleged assignment by him prior to the foreclosure, and, during an offer of proof, Loftis admitted that Stephens had not received any of Rangeford Resources stock that was pledged as consideration for the Letter Agreement and Note Assignment.[20]

Because there was no evidence of an actual assignment offered at trial, there was no evidence that Stephens transferred either his interest in the promissory note or his interests in the O'Benco leases.

---

18. Also, both documents erroneously referenced a December 2013 effective date instead of a December 2012 effective date.

19. "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary." RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981).

20. The parties also disputed whether Great Northern ever paid Stephens the $65,000.00 promised on closing. Great Northern introduced a $50,000.00 check issued to Stephens' father, argued that Stephens authorized the payment to his father, and stated that it had issued another check to Stephens for $12,500.00 that was not produced at trial. Stephens testified that he authorized the $50,000.00 payment to his father, but that payment was for Great Northern's obligation on the promissory note and stated that Great Northern never paid him the $65,000.00 as promised by the Letter of Agreement.

### C. The Trial Court Did Not Abuse its Discretion in Excluding Evidence Relating to the Rangeford Resources/Rojo Burro Transaction or an Alleged Assignment

In order for Great Northern to prevail on its evidentiary complaints, it must demonstrate that the excluded evidence was relevant. Circle Ridge argues that Great Northern's evidence "was properly excluded as irrelevant ... because there was no evidence of any" actual assignment. We agree.[21]

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. Here, all of the excluded exhibits and testimony referenced an assignment that Stephens was to make on the closing of the Rangeford Resources/Rojo Burro transaction. That transaction never closed, and no evidence that Stephens actually assigned his interest to Great Northern was offered at trial. In the absence of evidence of an actual assignment by Stephens, we cannot find that the trial court abused its discretion in concluding that evidence of the Rangeford Resources/Rojo Burro negotiations and documentation contemplating a future assignment were irrelevant to the causes of action asserted in the parties' live pleadings or the parties' defenses. Thus, we overrule Great Northern's point of error related to the trial court's exclusion of this evidence.

### D. Great Northern Did Not Preserve Error on Exclusion of Evidence Not Related to an Alleged Assignment

Nathanial Moran represented Great Northern in connection with its dispute regarding money due to Circle Ridge under the promissory note. After Circle Ridge and Stephens passed Moran as a witness, Great Northern asked the trial court if it could ask him a question outside of the jury's presence. The trial court agreed, and Great Northern questioned Moran during an offer of proof. Moran testified that he believed Searle only represented Circle Ridge during the foreclosure proceedings. After Moran was questioned, Great Northern passed him as a witness, but did not seek to admit his testimony and did not ask the trial court to rule on whether his testimony was admissible.

"To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *In re R.N.*, 356 S.W.3d 568, 572 (Tex. App.–Texarkana 2011, no pet.) (quoting *Lister v. Walters*, 247 S.W.3d 381, 383 n.1 (Tex. App.–Texarkana 2008, no pet.)). In *R.N.*, we explained that counsel must offer the testimony of a witness obtained during an offer of proof in order to preserve error. *Id.* As in *R.N.*, "although the record of the intended testimony was made, no request was made of the court to allow the introduction of that testimony. The trial court did not rule on the admissibility of the testimony because it had not been offered." *Id.* Thus, because the trial court did not rule " 'on the request, objection, or motion, either expressly or implicitly,' or

---

21. By a separate point of error, Great Northern argues that the trial court erred in failing to grant its motion for mistrial, which was based on the trial court's evidentiary rulings resulting in exclusion of a majority of Great Northern's evidence. In support of this point of error, Great Northern relied on the arguments it made relating to the trial court's exclusion of evidence. Because we determine that the trial court did not abuse its discretion in making its evidentiary rulings, we overrule Great Northern's point of error complaining of the trial court's failure to grant a mistrial based on its evidentiary rulings.

did not refuse 'to rule on the request, objection, or motion,'" Great Northern failed to preserve the issue of alleged error in the failure to admit Moran's testimony.[22] *Id.* (quoting TEX. R. APP. P. 33.1).

Similarly, Great Northern also failed to preserve its point of error that the trial court erred in excluding Mike's testimony "regarding the financial and business relationship between Kevin Stephens and Chad Hamilton" and testimony regarding Stephens' "role in the disappearance of equipment sold to Great Northern for use on the leases." The testimony was obtained by an offer of proof, after which Great Northern "passed the witness" and did not request the trial court to include any of the testimony. Accordingly, the trial court did not rule on the admissibility of this testimony, and any error on this point is not preserved.

## IV. The Trial Court's Directed Verdicts

### A. Directed Verdicts on Great Northern's Claims Were Proper

#### 1. Standard of Review

In reviewing the trial court's directed verdicts on issues in which Great Northern had the burden of proof at trial, "we decide whether there is any evidence of probative value to raise an issue of material fact on the question presented, and we review the evidence in the light most favorable to the person suffering the adverse judgment." *Exxon Corp. v. Emer-*

ald Oil & Gas Co., L.C., 348 S.W.3d 194, 220 (Tex. 2011); *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam). The presence of some evidence "will defeat the directed verdict." *Exxon*, 348 S.W.3d at 220. The Texas Supreme Court has observed a directed verdict may be proper in two situations: (1) "when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery" and (2) "if the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

A "no evidence" point will be sustained only if there is a complete absence of evidence establishing a vital fact, the only evidence offered to prove a vital fact cannot be considered due to a rule of law or evidence, there is less than a scintilla of evidence to prove the vital fact, or the opposite of the vital fact is conclusively established. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010). More than a scintilla of evidence exists when the evidence permits the conclusion of reasonable and fair-minded people to differ. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

---

**22.** Great Northern also argues that the trial court erred in failing to admit an exhibit labeled "GN Ex 15," which was actually admitted into evidence. It also argues, in a conclusory manner, that the trial court erred in excluding a document, labeled "D–12," in which Moran attempted to negotiate a structure of payments in a last attempt to avoid the trustee's sale. The record demonstrates that this exhibit was excluded on the basis that it constituted a settlement negotiation. Great

Northern does not discuss the basis on which D–12 was excluded, offers no concise argument as to why the trial court may have erred in excluding the document as a settlement negotiation, and cites no authority to support its position. To the extent that we can consider Great Northern's conclusory statement to constitute a separate point of error complaining of the exclusion of D–12, we find the matter forfeited for failure to comply with Rule 38.1. *See* TEX. R. APP. P. 38.1(i).

In our review, we credit favorable evidence if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

## 2. The Trial Court Properly Directed Verdict Against Great Northern on its Breach of Contract Claim Against Stephens

During the December 2012 through January 2013 time frame, Great Northern used Stephens' assistance to obtain production equipment. According to Loftis' testimony, Stephens would transfer Great Northern's requests for equipment to Chad Hamilton, who would provide the equipment. On presentment of a bill by Hamilton, Great Northern would pay. Great Northern allegedly ordered and paid for pump jacks and pipes from Hamilton, which were never delivered.

In its pleadings, Great Northern asserted a breach of contract action against Stephens for failure to provide the pump jacks and pipes as agreed on. In order to establish that Stephens breached a contract, Great Northern was required to put forth evidence demonstrating that it had a contract with Stephens in which Stephens agreed to provide pump jacks and pipes.

In an offer of proof, Great Northern included (1) a document appearing to be an order placed with Hamilton on January 24, 2013, for twenty-five "pumping units," for a total price of $12,000.00, with the notation, "Did we pay?"; (2) an order with Hamilton for $35,000.00 worth of tubing; (3) a document showing that Great Northern paid Hamilton two "Pumper Charge[s]"; and (4) checks written by Great Northern to Hamilton, allegedly for the equipment ordered by it. Omitted from the documentary offer was anything tying Stephens to the promise to provide pump jacks and pipes.

In fact, Loftis indicated that Stephens was acting on Great Northern's behalf in relaying its need to Hamilton. According to Loftis, Stephens said he was receiving a commission on the equipment sales.[23] Loftis testified that, in total, Great Northern paid $50,000.00 to Hamilton for pipes and pump jacks that were either damaged or not delivered.

On its breach of contract claim, Great Northern was required to bring forth more than a scintilla of evidence showing that it had a contract with Stephens to provide pipes and pump jacks and that Stephens breached that agreement. *See Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888, 898 (Tex. App.–Texarkana 2006), *aff'd*, 307 S.W.3d 267 (Tex. 2010). However, even in reviewing the evidence in the light most favorable to Great Northern, nothing demonstrated that Stephens was anything other than an intermediary. Instead, the evidence showed only that Great Northern's contract with respect to provision of the pump jacks and pipes was

---

23. Great Northern represented in its briefing that "Kevin Stephens acknowledged that he had a contractual agreement to furnish pipe and supplies to Great Northern." It claimed that Mike testified to that fact. It is true that, during an offer of proof, Mike testified that Hamilton was Stephens' "partner in pipe deals ... East Texas Pipe," that Stephens "funded the money for [Hamilton] to go and buy pipe," and that the pipe was delivered to Great Northern, but was repossessed because Stephens "felt he wasn't paid his money."

Mike also testified in the offer of proof that Stephens delivered pump jacks to Great Northern, but that Great Northern was unable to use them because "[t]hey came up missing." However, the meaning of this testimony was never explained, none of Mike's testimony on this matter was presented to the jury, and Great Northern did not ask the trial court to rule on the admissibility of that testimony. Therefore, the record does not support this contention by Great Northern.

with Hamilton, not Stephens. Accordingly, because there was no evidence of a contract showing that Stephens, individually, was under an obligation to provide pipes and pump jacks, the trial court properly granted his motion for directed verdict on Great Northern's breach of contract claim.

### 3. Any Complaint Regarding the Directed Verdict Against Great Northern on its Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing is Not Properly Briefed

■ In its pleadings, Great Northern asserted a cause of action against Circle Ridge and Stephens for breach of the implied covenant of good faith and fair dealing because (1) they "had an agreement with [Circle Ridge and Stephens] wherein [Great Northern] bargained for rights in the OBENCO Leases," (2) "[p]ursuant to this agreement[,] the Defendants were required to act in good faith," (3) Great Northern "had a justified expectation that [Circle Ridge and Stephens] would act in a reasonable manner in providing [them] with the bargained for rights to well bores and oil and gas lease interests," (4) Circle Ridge and Stephens "failed to provide [Great Northern] with the bargained for rights," and (5) their conduct resulted in a breach of the implied covenant of good faith and fair dealing and damaged Great Northern. The trial court directed a verdict against Great Northern on this claim.

■ The Supreme Court of Texas has not recognized an implied covenant of good faith and fair dealing, under which every contract gives rise to a separate duty in tort, although it has acknowledged that a duty may arise "as a result of a special relationship between the parties governed or created by a contract." *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). In its briefing, Great Northern recites this law, but the only analysis offered on whether the trial court erred in directing a verdict against Great Northern on this claim is as follows:

> Specifically, the actions of Stephens and Briscoe, interfered with Great Northerns [sic] ability to prosecute its efforts in developing the subject property as testified by Loftis, ... Briscoes' [sic] claims to purchase the interest, which he already knew were [sic] sold,[24] are also an interference as further outlined below. Thus, and [sic] independent duty in Tort arises, and violates the Covenant of Good Faith and Fair Dealing.

We find that Great Northern has not provided this Court with "a clear and concise argument for the contention[ ] made, with appropriate citations to authorities" in support of its argument. Tex. R. App. P. 38.1(i).[25] "Failure to provide citations or argument and analysis as to an appellate issue may waive it." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015). Because a liberal reading of Great Northern's brief does not assist us

24. Contrary to this representation, Briscoe actually testified that he did not know of any alleged assignment by Stephens.

25. Specifically, Great Northern fails to explain how it had a "special relationship" with Circle Ridge and/or Stephens significant enough to create a duty by them to deal fairly and in good faith with Great Northern. Also, Great Northern fails to explain (1) whether this cause of action applied to Briscoe or Circle Ridge in the absence of their agreement of any purported assignment by Stephens, (2) how Stephens could have been said to breach any duty of good faith and fair dealing (assuming there was such a duty imposed on him) in the absence of the closing of the Rangeford Resources/Rojo Burro transaction, and (3) what "actions" by Stephens and Briscoe allegedly constituted a breach of the implied covenant of good faith and fair dealing.

in effectively evaluating any ground on which we could overturn the trial court's directed verdict, we conclude that this point of error is waived and overrule it.[26]

## B. Directed Verdict on Claims Against Great Northern/the Damage Award

 Great Northern argues that the trial court erred in directing a verdict on Circle Ridge's breach of contract claim. The elements of a claim for breach of contract are (a) a valid, enforceable contract, (b) performance under the contract by the claimant, (c) breach by the defendant, and (d) an injury to the claimant caused by the breach. *Werline*, 209 S.W.3d at 898. Circle Ridge moved for a directed verdict on its breach of contract action, which was based on Great Northern's failure to pay the promissory note. The trial court directed a verdict on this issue, and Great Northern complains. Where "a party moves for a directed verdict on an issue on which he bore the burden of proof, he must demonstrate that he conclusively proved all facts necessary to establish his

right to the requested verdict." *Nat'l City Bank of Indiana v. Ortiz*, 401 S.W.3d 867, 885 (Tex. App.–Houston [14th Dist.] 2013, pet. denied).

At trial, it was undisputed that the promissory note was a valid, enforceable contract and that Great Northern failed to pay the promissory note according to the note's terms. Circle Ridge also established that it had completed its performance under the contract and that it was damaged by Great Northern's failure to pay. Before the trial court directed a verdict on Circle Ridge's breach of contract claim, Great Northern admitted its failure to pay and had stipulated that, if Stephens had not made any assignment under the note, it owed Circle Ridge $637,114.15.

Yet, on appeal, Great Northern challenges the trial court's ruling solely on the basis that Briscoe could not act alone, without Stephens, in enforcing the promissory note.[27] This argument, however, which is related only to the enforcement of the promissory note, and not its breach, has no bearing on the question of whether

---

**26.** Great Northern's appellate brief contained the following points in its lists of issues presented:

- "[T]he Court erred with regard to granting Kevin Stephens' motion for directed verdict against Great Northern with respect to Great Northerns [sic] cause of action of fraud against Kevin Stephens."
- "[T]he Court erred in granting Kevin Stephens' and Bill Briscoe's instructed and directed verdict against Great Northern claims in dismissing Great Northerns [sic] claims against them for unjust enrichment."
- "[T]he Court erred in so far as it granted Kevin Stephens and Bill Briscoe's [sic] for instructed or directed verdict that Great Northern take nothing from Briscoe and Stephens with respect to its claims for negligent misrepresentation."
- "[T]he Court erred in entering a directed verdict in favor of Briscoe, Circle Ridge and Kevin Stephens with regard

to Great Northerns [sic] claims for interference with contract."

However, the brief presents no argument on these points. It is unclear whether these points of error were included in the list of issues presented by mistake or whether any argument on these points was omitted by mistake. In any event, to the extent that Great Northern actually intended to raise these separate points, we overrule them under Rule 38.1(i) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(i).

**27.** As previously discussed, Great Northern argues that Stephens assigned his interests in the note to Great Northern and therefore could not participate with Circle Ridge to enforce the note. Because Circle Ridge could not enforce the note without Stephens, Great Northern argues, its foreclosure was invalid. For the reasons stated above, no assignment was ever established, only a promise to make a future assignment. Accordingly, this argument is without merit.

Great Northern failed to pay the promissory note according to its terms.[28] Simply put, Great Northern has not raised any challenge relevant to the elements of Circle Ridge's breach of contract claim. Because there is no relevant argument in its brief explaining why the trial court erred in finding that Circle Ridge conclusively proved the elements of its breach of contract claim, we overrule Great Northern's point.

We conclude that the trial court's directed verdict on Circle Ridge's breach of contract claim and its damage award, based on the stipulation of the parties, were both proper.[29] Consequently, we overrule Great Northern's argument that the trial court erred in directing a verdict on Circle Ridge's breach of contract claim and in assessing damages in accordance with the parties' stipulation.

## V. The Trial Court Properly Entered Judgment for Circle Ridge On Its Trespass to Try Title Claim

 Trespass to try title is the sole method to determine title to land or real property in cases where there is no boundary dispute. *Martin v. Amerman*, 133 S.W.3d 262, 267 (Tex. 2004), *overruled on other grounds by* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(c) (West 2015) (providing declaratory relief in boundary disputes where the placement of the boundary is also determinative of the issue of title); *Berg v. Wilson*, 353 S.W.3d 166, 180 (Tex. App.–Texarkana 2011, pet. denied). In a trespass to try title suit, "it is 'incumbent on the plaintiff to discharge the burden of proof resting on him to establish superior title.'" *Tipps v. Chinn Expl. Co.*, No. 06-13-00033-CV, 2014 WL 4377813, at *5 (Tex. App.–Texarkana Sept. 5, 2014, pet. denied) (mem. op.) (quoting *Davis v. Gale*, 160 Tex. 309, 330 S.W.2d 610, 612 (1960)). Great Northern argues that Circle Ridge did not meet its burden of proof. We disagree.

### A. Standard of Review

 "In reviewing a legal sufficiency complaint of an adverse finding on which the appellant did not have the burden of proof, the appellant must demonstrate on appeal that no evidence supports the adverse finding." *Monasco v. Gilmer Boating & Fishing Club*, 339 S.W.3d 828, 830 (Tex. App.–Texarkana 2011, no pet.) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); *Cendant Mobility Servs. Corp. v. Falconer*, 135 S.W.3d 349, 352 (Tex. App.–Texarkana 2004, no pet.)). As we stated in *Monasco*,

> We will sustain such a challenge only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact.

*Id.* (citing *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists." *Id.* (citing *Burroughs Wellcome v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)).

---

28. Nevertheless, we address Great Northern's argument below in discussing why the trial court properly overruled its motion for judgment notwithstanding the verdict.

29. Our disposition of this matter also resolves Great Northern's complaint that the trial court erred in overruling its motion for judgment notwithstanding the verdict, which argued that Circle Ridge should take nothing on its breach of contract claim.

"When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appealing party did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding." *Id.* "The evidence is sufficient to support the adverse finding if the evidence is such that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence." *Id.* at 830–31. "A challenge to the factual sufficiency of the evidence will be sustained if the evidence is so weak or the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 831 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

### B. Analysis

"To maintain an action of trespass to try title, the person bringing the suit must have title to the land sought to be recovered." *Tipps*, 2014 WL 4377813, at *5 (quoting *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App.–Texarkana 2010, no pet.)). "A plaintiff[']s right to recover depends on the strength of his or her own title, not the weaknesses of the title of his or her adversary." *Id.* (quoting *Ramsey*, 313 S.W.3d at 505). "A plaintiff is not entitled to recover unless the plaintiff's own title is effectively disclosed." *Id.* "On the failure of a plaintiff to establish superior title in a trespass to try title suit, the proper course of action is for the trial court to enter a take-nothing judgment." *Id.*

"Recovery can be based on proof of (a) title through regular chain of conveyances from the sovereign, (b) superior title out of a common source, (c) title by limitations, or (d) unabandoned prior possession of the land." *Id.* (citing *Plumb v. Stuessy*, 617 S.W.2d 667 (Tex. 1981)); *Session v. Woods*, 206 S.W.3d 772, 779 n.2 (Tex. App.–Texarkana 2006, pet. denied)). Here, Great Northern asserts superior title out of a common source. "Generally by this means, [Circle Ridge], as the plaintiff, may prove a prima facie case by connecting its title and [Great Northern]'s title through complete chains of title to the common source and then by showing that its[—Circle Ridge's—]title is superior." *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994).

In this case, however, Great Northern has asserted that its title derives from the same source as Circle Ridge's title. Rule 798 of the Texas Rules of Civil Procedure provides that "[i]t shall not be necessary for the plaintiff to deraign title beyond a common source." TEX. R. CIV. P. 798. In other words, Circle Ridge established, by certified copies of deeds that were introduced into evidence, that Great Northern acquired title for its interests in the O'Benco leases from Circle Ridge and Stephens, who had acquired the same interests from O'Benco III, LP. Thus, Circle Ridge "need only demonstrate good title coming from that common source to meet its burden of proof." *Rogers*, 884 S.W.2d at 768.

We find that Circle Ridge established this objective by demonstrating that it obtained title via the trustee's deed following the foreclosure, which the jury concluded was not wrongfully accomplished.[30] Fur-

---

**30.** Great Northern argues that Circle Ridge did not meet its burden of establishing superior title because "it cited additional parties owning interests." We have previously written on this point. Six days before trial, Circle Ridge amended its petition to add WJ South Waskom # 1, LLC, Topcat Oilfield Transport, LLC, and the United States of America as parties to the lawsuit (Newly–Named Defendants). However, as we have previously ruled in a related interlocutory appeal in our cause number 06–16–00029–CV, nothing in the rec-

ther, the assignment and bill of sale conveying the interests in the O'Benco leases to Great Northern provide that Circle Ridge and Stevens

> expressly reserve for themselves, their successors and assigns, the Vendor's Lien, as well as the superior title in and to the above described property, premises and improvements, against the above described property, premises and improvements until the above described Note and all interest thereon has been fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute.

Also, the Deed of trust states,

> Trustee may, after any request or direction by Beneficiary, sell, not only the Subject Interests included within, but also all other items constituting a part of, the Mortgaged Property, or any part, along with all or any part of the Lands included within the Mortgaged Property all as a unit and as a part of a single sale, or may sell any part of the Mortgaged Property separately from the remainder of the Mortgaged Property. It is agreed that in any deed or deeds given by Trustee, ... shall be taken by all courts of law and equity as prima facie evidence that the statements or recitals state facts and are without further question to be so accepted, and [Great Northern] expressly ratifies and confirms any and all acts Trustee may lawfully do by virtue of the authority and powers granted in this Deed of Trust ....

> If Beneficiary is the purchaser of all or any part of the Mortgaged Property ..., at any sale, whether the sale is made under the power of sale vested in Trustee, upon any other foreclosure of the Liens or otherwise, Beneficiary shall, upon any purchase, acquire good title to the Mortgaged Property purchased, free of the Liens provided in this Deed of Trust.

In light of these documents, we conclude that legally and factually sufficient evidence supports the trial court's decision to quiet title in favor of Circle Ridge against Great Northern. Accordingly, we overrule this point of error.[31]

## VI. Unpreserved Points

### A. Great Northern Did Not Preserve Complaints on Appeal Related to Voir Dire

Great Northern argues that the trial court erred in overruling its objections during voir dire because it allowed Stephens to use the veniremembers as experts in violation of Rules 701–706 of the Texas Rules of Evidence and interjected "improper evidentiary matters into the trial." Specifically, Great Northern argues that counsel's discussion with veniremember number 217 bolstered Stephens' case on the improper notarization of documents by Abercrombie and that his conversation with Williams was aimed at obtaining expert testimony about wells in the Waskom area and their productivity, and

---

ord suggested that these parties were served with citation before trial, the Newly–Named Defendants were not parties to the lawsuit, and the trial court's judgment does not affect the Newly–Named Defendants. *Great N. Energy, Inc. v. Circle Ridge Prods., Inc.*, No. 06-16-00029-CV, 2016 WL 7912458, at *2 (Tex. App.–Texarkana Sept. 28, 2016, no pet.) (mem. op.).

**31.** Our ruling on this matter also resolves Great Northern's complaint that the trial court erred in failing to grant its motion for judgment notwithstanding the verdict on Circle Ridge's trespass to try title claim.

discrediting Loftis.[32] We conclude that none of these issues are properly preserved for our review.

### 1. Great Northern's Complaint Regarding Veniremember Number 217 is Not Preserved

■ Veniremember number 217 is an attorney. During voir dire, Stephens' counsel asked her why documents are notarized. Veniremember number 217 responded that documents are notarized "to legitimize the person, that that's who actually signed the document." After veniremember number 217 gave this answer, Great Northern approached the bench and argued that Stephens was "not asking the proper factual question to the jury ... [and was] trying to bolster his case." Stephens' counsel responded, "Judge, I haven't talked about a single fact of this case," Great Northern replied, "That is where he's going," and the trial court simply stated, "I have to wait to see."

The trial court did not rule on the objections lodged by Great Northern at that juncture, and there was no request to strike venireperson number 217's previous answer. Then, the following discussion occurred:

[Stephens' counsel]: (Venireperson number 217], we were talking about the notary. And the clients come in and they say: You know what? We're going to take some time and money. I'm going to give everything to my good friend Bill. He's also a notary, so let's—if you'll draft the will, he'll notarize it. You're shaking your head no?

VENIREPERSON [NUMBER 217]: No.

[Stephens' counsel]: Why not?

VENIREPERSON [NUMBER 217]: Because that's inappropriate. If I'm going to notarize something in my office, then that person needs to be in my office.

[Stephens' counsel]: Okay.

VENIREPERSON [NUMBER 217]: We need to lay eyes on them or we need to go to them and know who they are.

Great Northern did not object to venireperson number 217's testimony while venireperson number 217 answered Stephens' questions. Instead, Great Northern asked to approach the bench after the above-referenced discussion. At that point, however, Great Northern only objected that venireperson number 217's answer "invade[d] the province of the Court" because "the lady just told them what the law is. That's a function of the court." The trial court overruled Great Northern's objection after Stephens responded that venireperson number 217 was "talking about her office." Again, without objection, Stephens continued the discussion with venireperson number 217:

[Stephens' counsel]: Well, the notary, he's going to get everything. Is there anything improper about that?

VENIREPERSON [NUMBER 217]: The notary is the same person that's receiving all of the property under the will?

[Stephens' counsel]: Yes, ma'am.

VENIREPERSON [NUMBER 217]: That—that would be improper because that person, the notary, has a vested interest in it. They're not supposed to notarize anything for which they're receiving the benefit.

[Stephens' counsel]: Okay. And I assume, if that's what they wanted to do, you've got to tell them to go elsewhere.

**32.** An explanation of how Williams was used to discredit Loftis' testimony is omitted from Great Northern's briefing and, consequently, cannot be evaluated.

VENIREPERSON [NUMBER 217]: That's correct.

[Stephens' counsel]: Thank you, [venireperson number 217].

On appeal, Great Northern does not argue that the trial court erred in overruling his objection that venireperson number 217's testimony invaded the province of the trial court. Instead, Great Northern only argues the issue of bolstering. In order to preserve error on this point, Great Northern is required to demonstrate that it either obtained a ruling on the issue of bolstering or that the trial court refused to rule on the matter after Great Northern objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); see Babcock v. Nw. Mem'l Hosp., 767 S.W.2d 705, 708 (Tex. 1989).

 Here, the record establishes that Great Northern did not obtain a ruling from the trial court on the issue of bolstering. Although it secured a ruling that venireperson number 217's testimony invaded the province of the court, "a party's complaint on appeal must comport with the objection made at trial." Lee v. Holoubek, No. 06-15-00041-CV, 2016 WL 2609294, at *5 (Tex. App.–Texarkana May 6, 2016, no pet.) (mem. op.); see Schwartz v. Forest Pharm., Inc., 127 S.W.3d 118, 125 (Tex. App.–Houston [1st Dist.] 2003, pet. denied). We find that Great Northern did not preserve its complaint that venireperson number 217's answers during voir dire were used to bolster Stephens' case. Accordingly, this point is overruled.

**2. Great Northern's Complaint Regarding Veniremember Number 280 is Not Preserved**

 Another veniremember, number 280, was from the Waskom area and informed the panel that he "pull[ed] ... workover rig[s]" and was familiar with the wells located on the O'Benco leases. Ste-phens asked veniremember number 280, "Do you have any knowledge about how good those wells are, the production?" veniremember number 280 responded, "Shallow wells, you know, they're not that—to me, they're not." There was no objection to this answer or to veniremember number 280's subsequent clarification that the wells on the O'Benco leases were on the lower end of the production side.

However, when Stephens asked veniremember number 280 if he knew whether the wells were on "the one-barrel-a-day-side," counsel approached the bench and argued, "[Stephens] is attempting to elicit factual information from a juror. That's designed to prejudice this jury ... and that's improper. The evidence will come from the witness stand and not from a prospective juror." In response, Stephens stated that he was only attempting to determine whether he wanted to keep veniremember number 280 on the panel. The trial court ruled by stating, "I don't see it as a commitment question yet .... so I'm going to overrule the objection." Great Northern immediately asked for and was denied a mistrial, although it provided no further argument on or clarification of its objections to Stephens' voir dire questions. From that point, Stephens' discussion with veniremember number 280 occurred without objection.

To preserve a complaint for appeal, a party must lodge a timely objection that states "the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context," and obtain an adverse ruling on the issue complained of on appeal. See TEX. R. APP. P. 33.1(a)(1)(A). On appeal, Great Northern argues that the trial court allowed Stephens to use veniremember

number 280 as an expert witness in violation of Rules 701 through 706 of the Texas Rules of Evidence. Nothing in the record indicates that Great Northern objected on the basis of Stephens attempting to interject expert evidence, and the record establishes that the trial court did not understand that any such objection was made. Because Great Northern did not raise the issue on appeal before the trial court, error is not preserved for our review. *See id.*; *Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 782 (Tex. App.–Texarkana 2015, pet. dism'd).[33]

### B. Jury Submissions

■■■■ Great Northern asserted a cause of action against Circle Ridge for wrongful foreclosure. The trial court submitted the matter to the jury. On appeal, Great Northern argues that the trial court erred in the manner that it submitted the wrongful foreclosure issue to the jury because that "improperly shifted the burden of proof to Great Northern." On the record, however, Great Northern only complained of the denial of its requested jury instructions, but stated affirmatively that it had no objections to the trial court's submitted jury charge, including the wrongful foreclosure questions and instructions. Thus, it failed to preserve this issue for our review. TEX. R. APP. P.

33.1(a)(1)(A); *see Burbage v. Burbage*, 447 S.W.3d 249, 256 (Tex. 2014) (citing *Thota v. Young*, 366 S.W.3d 678, 691 (Tex. 2012)); *In re D.G.*, No. 06-15-00025-CV, 2015 WL 6520251, at *12 (Tex. App.–Texarkana Oct. 28, 2015, pet. denied) (mem. op.).[34]

### C. Jury Argument

■■■■ Great Northern argues that the trial court erred in "permit[ing] the counsel for Circle Ridge to argue before the jury that Great Northern had stipulated that it owed $637,114.15." Circle Ridge contends that Great Northern failed to preserve the issue for our review. We agree.

Outside of the presence of the jury, Great Northern agreed that $637,114.15 was "what the balance would be if there [was] no proper purchase." On appeal, Great Northern complains that Circle Ridge "improperly argued to the jury that Great Northern ha[d] stipulated it owed the sum" without the qualification. During closing arguments, Circle Ridge informed the jury that Great Northern "stipulated that as of today, as we sit here, there are $637,114.15 still owed under this [promissory note]." Circle Ridge did not object to this closing argument. Thus, Great Northern has not preserved this point of error for our review. *See* TEX. R. APP. P. 33.1.

---

**33.** Great Northern did not raise any complaint about alleged errors during voir dire in its motion for new trial.

**34.** Great Northern also argues that the trial court "erred in allowing counsel for Circle Ridge" to argue "[w]ith respect to question number 1, insofar as counsel for Circle Ridge asserts the burden of proof was on Defendant." Since there was no objection during Circle Ridge's closing argument with respect to the burden of proof, and the briefing on this manner is not clear, we are not certain whether Great Northern intended to assert this argument as a separate point of error. In any event, we note that the elements of a wrongful foreclosure claim are "(1) a defect

in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price" and that Great Northern, as plaintiff alleging wrongful foreclosure, bore the burden on each element. *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *3 (Tex. App.–Austin May 18, 2012, pet. denied) (mem. op.) (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.–Corpus Christi 2008, no pet.) (citing *Charter Nat'l Bank–Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.–Houston [14th Dist.] 1989, writ denied)).

## VII. Motion for Judgment Notwithstanding the Verdict Was Properly Overruled

 Great Northern filed a timely motion for judgment notwithstanding the verdict, which the trial court did not grant. On appeal, Great Northern raises the following issue:

The Court erred in failing to grant Great Northern Energy's Motion for Judgment NOV with regard to its contentions that is has no liability with regard to the Circle Ridge Production note, as asserted by Circle Ridge Production in the trial, because there is neither now or has there ever been any proper presentation of Circle Ridge's demands insofar as there is no proper assertion of Great Northerns [sic] liability under the $700K note because Circle Ridge does not have the authority, acting alone, to enforce, or even attempt enforcement of liability on such note, nor has it ever attempted to enforce the note in accordance with the law, or in awarding any claim that Great Northern Energy pay any attorney's fees for the collection activities related to Circle Ridge Production's collection efforts in such connection.

Though the summary of this point of error is confusing, the substance of Great Northern's point of error argues that judgment notwithstanding the verdict was required on the jury's answers with respect to the wrongful foreclosure claims because Circle Ridge could not proceed to foreclosure without Stephens' participation.

 "The standard of review for a trial court's denial of a motion for judgment notwithstanding the verdict is to determine whether the evidence conclusively proves a fact that establishes a party's right to a judgment as a matter of law." *Isaacs v. Bishop*, 249 S.W.3d 100, 106 n.4 (Tex. App.–Texarkana 2008, pet. denied)

(citing *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991)). "If so, then the trial court erred in denying the motion for judgment notwithstanding the verdict." *Id.*

 On review, we consider the evidence and inferences tending to support the trial court's decision and disregard evidence and inferences to the contrary. *Id.* (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)). "Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise." *Id.* "Accordingly, the test for legal sufficiency is the same for directed verdicts and judgments notwithstanding the verdict." *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). "We view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* "We are not a fact-finder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact." *Id.*

In order to meet its burden of proof on the wrongful foreclosure claim, Great Northern was required to demonstrate a defect in the foreclosure proceedings. It attempted to do so by arguing that Stephens did not participate in the foreclosure. To support this claim, Great Northern offered Mike's testimony. Mike testified that he would have known if Stephens had made demand for payment under the promissory note from Great Northern. According to Mike, Stephens did not give Circle Ridge permission to act on his behalf in enforcing the note. Yet, both Briscoe and Stephens testified that Stephens gave Searle permission to foreclose. Thus, the jury was faced with conflicting evidence on whether Stephens

"request[ed] [the] Trustee to proceed with foreclosure" under the deed of trust. The jury resolved this conflict in Circle Ridge's favor after hearing that Mike regularly stayed at Loftis' home, that he had stayed at Loftis' home after the first day of trial, that Loftis had purchased a business partly owned by Mike, and that Loftis and Mike were trying to start a new business together.[35]

Because the jury was presented with conflicting evidence on whether Circle Ridge acted alone in the foreclosure proceedings and resolved that matter in Circle Ridge's favor, we conclude that the trial court did not err in overruling Great Northern's motion for judgment notwithstanding the verdict. Accordingly, we overrule this point of error.

## VIII. Remand is Required to Determine the Proper Amount of Attorney's Fees

Before the case was submitted to the jury, both parties agreed to submit the issue of attorney's fees to the trial court. After reviewing Circle Ridge's motion for attorney's fees and costs and the supporting documentation attached thereto, the trial court awarded $150,873.37 in attorney's fees to Circle Ridge.

 Great Northern argues that the trial court erred in making this award of attorney's fees because, under Section 3.110, Circle Ridge and Stephens could only enforce the promissory note together,

if the promissory note was a negotiable instrument. It also argues that, to the extent efforts to collect attorney's fees were made pursuant to the deed of trust, the award was improper since Circle Ridge and Stephens did not engage in the foreclosure jointly. We will not disturb the award of attorney's fees absent an abuse of discretion. *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 401 (Tex. App.–Texarkana 1999, pet. denied).

We have explained that Section 3.110 does not apply to the promissory note because it is not a negotiable instrument, that this case is governed by contract law, that the trial court properly directed a verdict on Circle Ridge's breach of contract claim for breach of the promissory note, and that there was evidence that Stephens requested Searle to foreclose, as contemplated by the deed of trust. The promissory note provided,

> If this Note is not paid at maturity, whether by acceleration or otherwise, and is placed in the hands of an attorney for collection, or if suit is filed thereon, or proceedings are had ... for collection of this Note, the undersigned, and any other party agreeing to pay this Note, consents and agrees to pay to the holder of this Note, reasonable attorney's fees ... together with all costs of collection.

Likewise, the deed of trust provided that Great Northern would pay "all costs and expenses incurred by Beneficiary, including without limitation, all legal ... fees,

---

**35.** It is true that the evidence demonstrated that Stephens chose not to actively seek collection of his portion of the debt under the promissory note prior to the foreclosure. However, that does not mean that Stephens abandoned his interest in the promissory note or that the foreclosure was wrongful. The evidence demonstrated that (1) Great Northern received the required notices, (2) Great Northern was warned in writing that it could either pay Circle Ridge's portion of the note

or face acceleration of the entire debt and foreclosure of their entire interests in the O'Benco leases, (3) the deed of trust provided that Searle could foreclose on all of Great Northern's interests in the O'Benco leases, and (4) Stephens gave Searle permission to proceed with foreclosure, which "expressly authorized and empowered" Searle "to sell all ... of the Mortgage Property" which secured the debt.

made and incurred in connection with [the promissory note] ... or in connection with the ... perfection, realization, ...or preservation of the security." Circle Ridge argues that these provisions of the promissory note and deed of trust required mandatory payment of attorney's fees. Alternatively, it argues that a party may recover attorney's fees for breach of contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015). Pursuant to the terms of the promissory note and deed of trust, we conclude that the trial court did not abuse its discretion in awarding attorney's fees for Circle Ridge's breach of contract or for fees associated with the foreclosure.

■ However, Great Northern also argues that the affidavit of Ronan Searle, one of Circle Ridge's attorneys, was deficient in the following respects: (1) claims were not properly identified and segregated, (2) the billing statements included work completed on forgery, negligence, civil conspiracy, and Texas Civil Theft Liability claims, (3) counsel's affidavit, which incorporated "the contemporaneous billing records of the firm Searle and Searle," included work completed by Dean Searle, without a separate affidavit from Dean averring that the services were reasonable and necessary, and (4) bills submitted by two law firms were "so insufficient that it [was] impossible to determine what duplication occurred." We agree that attorney's fees were not properly segregated.

In its motion for attorney's fees, Circle Ridge stated generally that (1) Searle & Searle, PC, expended fifty-four hours in its pre-suit collection attempts, at the rate of $275.00 per hour, through the foreclosure;

(2) Searle & Searle, PC, worked a total of 389.5 hours at the rate of $275.00 per hour to defend the suit filed by Great Northern in Dallas, to secure the transfer to Harrison County, and to litigate the consolidated lawsuits; and (3) the Runyan Law Firm, PC, expended 105 hours through trial, also at the rate of $275.00 per hour. The motion attached Ronan's affidavit and the affidavit of Michael Runyan, both of which restated the number of hours worked at the hourly rate of $275.00. The motion also attached billing records that contained general descriptions of the work performed, but did not segregate work performed for causes of action under which attorney's fees would not be recoverable.[36]

In *Tony Gullo Motors I, L.P. v. Chapa,* the Texas Supreme Court "reaffirm[ed] the rule that if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 313 (Tex. 2006). It further stated that "[i]ntertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. "[T]he need to segregate fees is a question of law," but "the fees necessary to prove particular claims often turn on ... facts." *Id.* at 312.

■ Circle Ridge asserted tort causes of action, including negligence in forging documents, negligence in attempting to assign interests to third parties, and civil conspiracy for forgery.[37] It also de-

---

**36.** For example, the billing records contained notations such as "[f]act [r]esearch," "telephone conference," "[l]egal [r]esearch regarding potential suit," "editing," "[i]nter-

office conference," and other general references.

**37.** Generally, a party may not recover attorney's fees unless authorized by statute or con-

fended tort claims asserted by Great Northern. Legal research and other work completed with respect to these tort claims would not advance Circle Ridge's breach of contract or trespass to try title claims. Thus, the tort claims did not become so intertwined that they were not required to be segregated. Accordingly, we sustain Great Northern's complaint regarding segregation of attorney's fees.[38] *See A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007); *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 29 (Tex. App.–Texarkana 2012, no pet.).

We remand the matter to the trial court to allow Circle Ridge the opportunity to properly segregate fees so that the trial court can make a factual determination on the amount of fees that were reasonable and necessary to litigate the claims for which attorney's fees are recoverable, in accordance with the guidelines set forth in *Chapa*.

## IX. Conclusion

We reverse only the amount of the trial court's award of attorney's fees and remand the matter to the trial court for further proceedings limited solely to that

issue. We affirm the trial court's judgment in all other respects.

## SUPPLEMENTAL OPINION ON MOTION FOR REMITTITUR

The trial court entered judgment in favor of Circle Ridge Production, Inc., in its dispute against Great Northern Energy, Inc. The trial court's judgment awarded Circle Ridge $150,873.37 in attorney fees for trial, $70,000.00 in contingent attorney fees,[39] and $78,798.75 in costs of collection. On March 22, 2017, this Court sustained Great Northern's point of error, which argued that attorney fees were not properly segregated. Accordingly, we reversed the award of attorney fees and remanded the matter to the trial court. With the exception of the issue of attorney fees, the trial court's judgment was otherwise affirmed in all other respects.

Pursuant to Rule 46.5 of the Texas Rules of Appellate Procedure, Circle Ridge has filed a motion for voluntary remittitur. The motion states (1) that "Circle Ridge seeks to regain the ability to operate the wells at issue," (2) that "the Texas Railroad Commission has been unwilling to transfer operatorship of the wells at issue from Great Northern to Circle Ridge be-

---

tract. *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 915 (Tex. 2015). We note that, typically, "[a] trial court does not have authority ... to award attorney's fees in trespass to try title suits." *Biltex Enters., Inc. v. Myers*, No. 02-13-00465-CV, 2015 WL 1967285, at *3 (Tex. App.–Fort Worth Apr. 30, 2015, no pet.) (mem. op.) (citing *EOG Res., Inc. v. Killam Oil Co., Ltd.*, 239 S.W.3d 293, 304 (Tex. App.–San Antonio 2007, pet. denied); *see John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002); *Ramsey v. Grizzle*, 313 S.W.3d 498, 511 (Tex. App.–Texarkana 2010, no pet.); *Hawk v. E.K. Arledge, Inc.*, 107 S.W.3d 79, 84 (Tex. App.–Eastland 2003, pet. denied). However, in this case, attorney's fees for the trespass to try title claim were specifically provided for by contract.

**38.** As a result of our findings, we need not address Great Northern's cumulative error argument.

**39.** These contingent fees included (1) $5,000.00 for "Post-Trial in Absence of Motion for New Trial," (2) $5,000.00 for "Motion for New Trial Filed and Overruled," (3) $20,000.00 for "Appeal to the Court of Appeals," (4) $15,000.00 for "Petition for Review State in Supreme Court of Texas," (5) $15,000.00 for "Merits Briefing in the Supreme Court of Texas," and (6) $10,000.00 for "Oral Argument and Completion of Proceeding in the Supreme Court of Texas."

cause of the pending appeal," and, (3) that "the best interest of judicial economy" requires reformation of the trial court's judgment to delete the order to pay $150,873.37 in attorney fees for trial, $70,000.00 in contingent attorney fees, and $78,798.75 in costs of collection.

Rule 46.5 states, "If the remittitur is timely filed and the court of appeals determines that the voluntary remittitur cures the reversible error, then the court must accept the remittitur and reform and affirm the trial court judgment in accordance with the remittitur." TEX. R. APP. P. 46.5.

We conclude that Circle Ridge's voluntary remittitur cures the reversible error, and we accept it. Accordingly, we vacate our judgment, but not our opinion, of March 22, 2017, and modify the trial court's judgment by deleting the orders to pay $150,873.37 in attorney fees for trial, $70,000.00 in contingent attorney fees, and $78,798.75 in costs of collection. As modified, we affirm the trial court's judgment.